### HINMAN *vs.* BORDEN.

An officer, having process requiring the arrest of a party, is bound to use all reasonable endeavors to execute it, and should at least go to the residence of the party; if he relies upon vague information of the absence of the party, derived from casual inquiries, he does so at the peril of being answerable for a false return.

An officer may return process on the morning of the day of its return, and is not responsible, although he might subsequent to the return have executed the process.

ERROR from the Oneida common pleas.   Borden sued Hinman in a justice's court for a *false return* of *non est inventus*, upon a *ca. sa.*, made by a deputy of Hinman, sheriff of Oneida, in a suit against one Harris, for whom Borden was special bail.   On the trial before the justice, the defendant had a verdict and obtained judgment for costs.   The plaintiff sued out a *certiorari.*   From the return, it appeared that a *ca. sa.* in the suit against Harris was delivered to the deputy on the 29th day of *June*, 1830, returnable on the 5th day of *July*, thereafter.   Harris resided in Utica, and had a family there, was at home from the 29th June to the 5th July, attending to his ordinary business, as a shoemaker; during that period he was every day in a shoe-store adjoining the office of the deputy, and passed his office almost every day; once during that time he passed the deputy, who was well acquainted with him, on the canal bridge in Utica; and on the morning of the 5th July was in the deputy's office, conversing with another person, the deputy being in his office, who, in a subsequent conversation upon the subject of not arresting him, told Harris that his case was just like Knight's; that he should not have arrested Knight on the *ca. sa.* he had against him, but Knight run himself directly in his face.   The above facts were shewn by Harris; two other witnesses proved that between the 29th June and the 5th July, they saw Harris every day in the streets.   The deputy testified that when the *ca. sa.* was delivered to him, he was told by the attorney who issued it, that Harris was off, boating, and that he wished him to re-

turn the *ca. sa.* promptly ; from what he had been told by the attorney, he supposed Harris was absent ; he, however, made inquiries for him of his neighbors, and understood that he was not at home, but did not go to his house.   He recollected seeing Harris in his office on the 5th July, but he was there *after* he had returned the *ca. sa.*, it having been returned before *nine* o'clock of the morning of that day ; that he used due diligence in executing the *ca. sa.*   The plaintiff also gave evidence of damages sustained by him.   On the coming in of this return, the common pleas of Oneida *reversed* the judgment of the justice, and the defendant sued out a writ of error.

*J. A. Spencer*, for the plaintiff in error, contended that the common pleas were not authorized to *reverse* a justice's judgment, on the ground that the verdict on which such judgment was rendered was against the weight of evidence ; and particularly so in an action of this character, penal in its nature, and prosecuted against a public officer.   The jury who passed upon the facts, having the witnesses before them, was capable of determining the degree of credit due to each ; which a court cannot be from a statement of their testimony as set forth in a return.   Here the deputy swore that he used due diligence in serving the process, and the jury believed him in preference to the witnesses on the part of the plaintiff.

*H. Denio*, for defendant in error.   The officer was guilty of gross negligence in not arresting the defendant in the original action.   *Comyn's Dig. tit. Retorn, C.*, 1 *G. ;* 15 *East,* 378 *;* 5 *Dowl. & Ry.* 97 ; 3 *Campb.* 47 ; 2 *R. S.* 382, § 32.   Upon *certiorari*, the common pleas are authorized to give judgment as the right of the matter may appear, 2 *R. S.* 257, § 181 ; and here they could not do otherwise than reverse the judgment below, as the verdict upon which it was founded was manifestly against evidence.   But if the common pleas erred in this particular, will this court on a writ of error review the judgment of the common pleas upon the facts of a case ?   It is contended that they will not.   2 *Caines*, 168.   14 *Johns. R.* 304.

*By the Court,* SUTHERLAND, J.  This is a clear case of a fraudulent and false return by the defendant's deputy, and the court of common pleas very properly reversed the judgment of the justice.  Even upon the testimony of the deputy himself, who was examined as a witness, there was a total want of due diligence.  He says he inquired of some of the defendant's neighbors if he was at home, and was informed that he was not, but he never went to the defendant's house, who lived in the same village; and Harris, the defendant in the execution, swears that he was at home attending to his ordinary business, during the whole time between the delivery of the execution to the deputy and its return day; that he passed the office of the deputy frequently; that he is well known to the deputy; that he once before the return day saw and passed him in the street; and that on the morning of the return day, he was in the sheriff's office, and there saw and conversed with the deputy; that he might at any time have been found, by inquiry for him at his house.

Admitting that the plaintiff had a right to return the writ on the morning of the return day, and that if he had used due diligence before, he would not be responsible although he might subsequently have executed the writ if it had not been returned, still the evidence of gross negligence at least is decisive in the case.  A sheriff is bound to use all reasonable endeavors to execute process.  He should go to the house of the defendant to ascertain whether he is at home, and if not, to learn where he is—particularly where he lives in his immediate neighborhood; and if, instead of pursuing that course, he chooses to rely upon the vague information obtained from casual inquiries in the street that the defendant is not at home, he does it at his peril.  The evidence fully warrants the belief that the deputy did not desire nor intend to arrest the defendant in the execution.  2 *R. S.* 382, *sect.* 32.  3 *Campb.* 46.  5 *Dowl. & Ryl.* 95.  16 *Com. L. R.* 232, *S. C.*

Judgment affirmed.