## TOMLINSON and others *vs*. ROWE, Sheriff of Oswego.

Plaintiffs' attorney, on issuing execution, is not bound to give notice to the sheriff that defendant resides and has property within the county. And though the giving of such notice would have enabled the sheriff to collect the amount of the judgment, the omission to do so forms no excuse for the sheriff's negligence in not collecting it.

Accordingly, where an execution against two parties, one of whom resided and had property within the county sufficient to satisfy the execution, was issued to a sheriff who, on making some inquiries, was informed that both defendants in the execution had failed and left the county, whereupon the sheriff made a return of nulla bona and the debt was thereby lost; *held*, that the sheriff was liable for negligence, though had the attorney informed him of the residence of the defendant in execution who lived within the county, the loss would have been prevented.

The amount of diligence required from a sheriff to whom an execution is issued, discussed by COWEN, J.

THIS was an action for false return of nulla bona to an execution of plaintiffs against Marcellus and Rice, the former living out of the county, the latter in the county, at Phœnix. He had resided there after February or March, 1841. The under-sheriff received the fi. fa. May 4th, 1841. He made inquiries and was informed that both defendants in the execution lived out of the county and had broken down, whereas Rice in fact lived in the county and had personal property sufficient to satisfy the debt. Of this the under-sheriff might have been informed had he written and inquired of plaintiffs' attorney who resided at Lysander, and that was known to the under-sheriff. The question of negligence generally was submitted to the jury, who found for defendant. Plaintiffs now move for a new trial on a case made.

*By the Court*, COWEN, J. There was evidence that Rice, one of the defendants, resided in the county of Oswego and had property sufficient to satisfy the execution. The return is that he had not property. It was literally falsified by the proof at the trial; and the question was whether the sheriff

was excused in making such a return, by a failure, after the, exercise of due diligence, to find the defendant. The result of the inquiries he did make was that both defendants resided out of the county and had failed; that Rice, however, resided near Phœnix which was in the county. He inquired neither of the plaintiffs nor their attorney; nor did he go to or near the residence of Rice to ascertain whether the information he had received was true. Here were three obviously accessible sources of inquiry by which the error he had been led into might have been corrected. He had reason to distrust what he had heard; for why should the execution have been sent into his county, unless the plaintiffs and their attorney knew that the responsible defendant resided there? So far as the under-sheriff sought information, he no doubt directed his inquiries very properly. He interrogated deputy sheriffs, constables, justices and tavern-keepers, pretty much without effect. But finally he learned that Rice lived just over the line of the county of Oswego. He stops there, the execution expires and the plaintiffs, in consequence, lose their debt; for Rice afterwards gave up his property to other creditors. Did the defendant go far enough in his inquiries? As an agent he was bound to the exercise of at least ordinary diligence; that which persons of common prudence are accustomed to use about their own business and affairs. Story on agency, 172.

Would any man engaged in the collection of his own debt, have stopped with the casual inquiries here made? It was said in argument that the plaintiffs' attorney should have informed the sheriff where Rice resided. I admit this would have prevented the loss that the plaintiffs have sustained; but the omission formed no excuse for negligence in the sheriff. It was not essential that he should have the notice. He may be liable without it. (*Dean and Chapter of Hereford* v. *Macknamara*, 5 Dowl. and Ryl., 95.) Bayley, J., said in the case cited, that the sheriff might excuse himself by showing ignorance of the party to be arrested; but Littledale, J., stated the proper qualification: "It is the duty of the sheriff, by himself or his officers, to adopt the proper measures for finding the person named in the writ; and if

he does not, he must abide the consequences." Voluntary ignorance, then, or that which arises from the sheriff's neglect to make the proper search, will not excuse. A notary who undertakes to charge an indorser, we have held, must not content himself with inquiries for his residence of those who may or may not know of it as accident may or may not have brought it under their notice. He is bound to inquire of those who would probably be acquainted with it. (*Spencer* v. *The Bank of Salina*, 3 Hill, 520.) It was not there allowed as an excuse that the plaintiff, who deposited the note for collection, had omitted to point out the indorser's residence. Indeed the character of the negligence in that case was very much like that complained of here. The notary overlooked the obvious sources of correct information. I know it has been said that the sheriff must have notice of the goods. (Norris' Peake, 610.) But no authority is cited. It has moreover been taken for granted at nisi prius that, to charge a sheriff with falsehood in a return of non est inventus, the plaintiff must give him notice that the defendant is in the county. (*Gibbon* v. *Coggon*, 2 Campb., 188.) But of what use such a general notice can be more than sending the writ, it is difficult to imagine. The act of sending the writ implies as much. That farther notice is not necessary may be seen by *Hinman* v. *Borden*, 10 Wend., 367. There the attorney even suggested that he thought the defendant was off engaged in boating, and desired that the ca. sa. should be returned promptly. The defendant's neighbors declared to the deputy sheriff that the defendant was not at home. The truth was directly the contrary. This court said the sheriff should have inquired at his house. In that case the deputy sheriff, it is true, knew where the defendant resided; but that is only a difference in circumstance. Going to the house is but one among the plain means of setting the question right. The general principle is laid down in that case, that a sheriff is bound to use all reasonable endeavors to execute process. "The sheriff," says Mr. Phillipps, " is bound to execute the process of the law in the most effectual manner; and it is the duty of the bailiff to use all means in his power to search and

make the arrest." 2 *Phil. Ev.*, 386, 7th Lond. ed.—Am. ed. of 1839.

I know the question of negligence is mixed up of law and fact; and that such questions most commonly belong to a jury. (*Foot* v. *Wiswall*, 14 Johns., 304.) Where the facts are ascertained, however, they become questions of law and belong to the court. (4 Johns., 377, 388, 9; 13 Wend., 133.) This was held in *Spencer* v. *The Bank of Salina*, where the notary was received to give an account of his course of inquiry. It was said the judge properly took the question into his own hands; and I think the case before us comes fully up to that. The under-sheriff here gave his own account of the degree to which he carried his diligence. For the whole life of the fi. fa., he neglected to inquire of the attorney, he took no means to learn any thing at the place where he was informed the defendant resided, though a few hours would, in either way, have removed all doubt; and it was scarcely possible to suppose that it would not.

On the whole, I think the learned judge should, according to the state of the law as understood both by the King's Bench and this court, have directed the jury to find for the plaintiff. He was, therefore, correct in granting a new trial.

New trial granted.