Parker, J.
 

 At the time Mygatt was called upon by Wash-burn, one of the assessors of Oxford, in the county of Chenango, for the purpose of obtaining the necessary information to enable the assessors to make the assessment, he was a resident of that town, but soon thereafter, in the same month, he removed to the county of Oswego. The statute requires that the owner of personal estate should be assessed for it in the town where he resides, (1
 
 R. S.
 
 389, § 5 ;) and the first question to be determined in this case is, whether the assessment of Mygatt was made at the time he was called upon by Washburn.
 

 One assessor cannot make an assessment; it is the joint act of all, or at least of a majority of the assessors. (2
 
 R. S.
 
 555, § 27; 7
 
 Cowen,
 
 530 ; 21
 
 Wend.
 
 175 ; 3
 
 Denio,
 
 598; 4
 
 id.
 
 127; 1
 
 Comst.
 
 82.) In accordance with a provision of the statute, (1
 
 R. S.
 
 390, § 7,) the assessors had divided their town into convenient assessment districts, and Washburn was assigned to the one in which Mygatt then resided. The statute requires
 
 *564
 
 the assessors, between the first days of May and July in each year, to proceed to ascertain by diligent inquiry the names of all the taxable inhabitants within the town, and all the taxable property, real and personal, within the same. (1
 
 R. S.
 
 390, § 8.) It was for the purpose of making such inquiry, that Washburn called upon Mygatt at the time mentionedand the statute seems to imply,- by giving the assessors till the first of July to make such inquiries, that the assessment is not to-be made till after that time. After giving such time, it proceeds in the next section to require that
 
 they,
 
 the assessors, shall prepare an assessment roll, and prescribes the form of it, and what it shall contain. It subsequently requires that such assessment roll shall be completed on or before the first day of August. The assessment roll is thus to be made out between the first of July and the first of August. That roll is the assessment, which may afterwards be reviewed or corrected in the manner prescribed by the subsequent provisions of the statute.*
 

 All that is done by the several assessors, in taking down names and entering descriptions and amounts in their respective districts, previous to the first of July, is merely the obtaining of information, preliminary to the assessment to be made when all the assessors meet in July, and examine and correct and alter such memoranda when they make out the assessment roll.
 

 If I am right in this construction of the statute, the assessment was not made on the 22d of May, but in July, and Mygatt was a resident of the county of Oswego when the assessment was made. It follows that the assessors of the town of Oxford erred in assessing him for personal property, and that the relator has been subjected to the payment of an illegal tax.
 

 But it is denied that the relator is pursuing the appropriate remedy, and it is contended that he can have no relief by mandamus, because he had, as is alleged, a complete remedy at law. If the relator had a remedy by action, it was not against the town of Oxford. It was decided in
 
 Lorillard
 
 v.
 
 The Tovm of Monroe,
 
 (12
 
 Barb.
 
 161,) that an an action will not lie against a town for an error made by the assessors of taxes of the townand
 
 *565
 
 the judgment in that case was affirmed by this court. (1
 
 Kern.
 
 392.) It may now, therefore, be considered as settled, that such officers are not the agents of towns, so as to render the torvns liable, in their corporate capacity, for the mistakes of such officers.
 

 But had not the relator a remedy against the assessors 7 I think they acted without jurisdiction, and that their proceedings were void. In assessing personal property, they had jurisdiction only over residents. I concede that assessors act judicially. If Mygatt had been a resident when assessed, and they had erred as to the amount, they would not have been liable for error.
 
 (Weaver
 
 v.
 
 Devendorf,
 
 3 Denio, 117; 7
 
 Barb.
 
 137; 3
 
 Comst.
 
 466.) But if they had no jurisdiction to act at all, they are liable. It is only when acting within their limited jurisdiction that they can be protected as acting judicially.
 
 (Prosser v. Secor,
 
 5
 
 Barb.
 
 607.) If this is so, they were liable, and might have been prosecuted for their act in subjecting the relator to the payment of an unfounded and illegal tax. The relator had, therefore, a legal remedy by action.
 

 The general rule has been held to be, that a party could not have a remedy by mandamus, when he had a legal remedy by action. (1
 
 Tenn. R.
 
 104; 2
 
 Cow.
 
 444; 1
 
 Wend.
 
 325; 10
 
 John.
 
 484; 10
 
 Wend.
 
 367; 6 Hill, 243 ; 12
 
 John.
 
 415 ; 19
 
 id.
 
 259.) It has been said that
 
 “
 
 this is not universally true in relation to corporations and ministerial officers
 
 (McCullough
 
 v.
 
 The Mayor of
 
 Brooklyn, 23
 
 Wend.
 
 459;) and in that case, where it appeared the common council had neglected its duty in omitting to issue a warrant to collect a tax, Bronson, J., said, that an action on the case would
 
 perhaps
 
 lie in favor of the plaintiff, who would be entitled to the money when collected, but that a mandamus would be a more appropriate remedy.
 

 The remark that corporations and ministerial officers were excepted from the general rule, was repeated in 2
 
 Barb.
 
 399 upon the authority last cited, and a case in 10
 
 Wend.
 
 393, which seems to warrant no such conclusion. On the contrary, Nelson, J., in
 
 *566
 
 that case says,
 
 “
 
 The proposition is, I believe, universally true, that the writ of mandamus will not lie, in any case, where another legal remedy exists, and it is used only to prevent a failure of justice. If such an exception exists, it can extend, I think, no further than was expressly recognized in
 
 McCullough
 
 v.
 
 The Mayor of
 
 Brooklyn, viz: if there be a refusal to perform a duty expressly devolved on the corporation, though an action on the case would
 
 perhaps
 
 lie, a mandamus may be awarded; and that is hardly more than saying,
 
 “
 
 if the remedy by action be doubtful, a mandamus will lie.”
 

 But a mandamus will only lie to give effect to a clear
 
 legal right.
 
 (2
 
 Comst.
 
 490; 5
 
 Metc.
 
 73.) What right has the relator in this case to insist that the defendants, shall compel the town of Oxford to refund the money thus illegally levied? The act by which the relator was deprived of his property was a tortious one. We have seen that the town was not liable in its corporate capacity for the tortious act of its assessors. It cannot be indirectly subjected to that for which it is not directly liable. The board of supervisors has no duty imposed on it by statute to redress grievances of this description ; nor is power given by statute to compel towns to refund money in compensation for the wrongful acts of the town officers. Power is conferred “ to audit the
 
 accounts
 
 of town officers and other persons against their respective towns; (1
 
 R. S.
 
 367, §4;) but this claim is not an
 
 account
 
 within the meaning of the statute, nor is it a legal claim against the town.
 

 It is a plausible view of the claim of the relator, to say that the .town has had the benefit of the money so illegally collected. And that I concede to be true, whether the money raised was applied to town, or county, or state purposes, or part to each; because it was applied to pay so much money, that the town was required to raise by tax. It may therefore seem equitable that the town should refund. But the answer to this is, that the town was in no way a party to the transaction, nor was the money applied to its use with its assent. No more debt or obligation to repay has been created, than where money is volunta
 
 *567
 
 rily paid for another without his request or knowledge, and not in pursuance of any duty. True, it was compulsorily obtained, but that compulsion was exercised, not by the town or its agents but by third persons, for whose acts it is in no respect responsible ; (12
 
 Barb.
 
 161;) and if those third persons have paid it voluntarily for the use of the town, it has created no liability as between the town and the relator, so long as the relator is not pursuing the specific property taken.
 

 I think the relator has no legal right to the remedy sought to be enforced. It was not the duty of the board of supervisors to determine the question of the relator’s residence. It had no power to hear the proofs and sit in judgment on the case, and to decide whether and by whom a tortious act had been committed. It had no legal control over the delinquent parties to compel them to make restitution. It is only where a board of supervisors stops short and refuses to perform a duty plainly devolved upon it, that a mandamus will be awarded. The judgment of the supreme court should be reversed.
 

 All the judges concurred.
 

 Judgment accordingly.