ANNE M. McLANAHAN AND ELLEN VANDERPOEL, Appellants, v. THE CITY OF SYRACUSE AND ROBERT HEWITT, TREASURER OF THE COUNTY OF ONONDAGA, Respondents, Impleaded with ALLEN MUNROE.

*Tax receiver — can receive nothing for the taxes but money — receiving a check and giving a receipt for the tax does not discharge it.*

A tax receiver has no authority to receive anything in payment of taxes but money, and an agreement by him to receive and hold the check of one against whose property taxes are assessed, until he shall be able to pay it, is void ; and an entry upon his roll that the taxes are paid, and the delivery of a receipt therefor to such person, do not amount to a payment or satisfaction thereof.

APPEAL from a judgment entered upon the trial of this action by the court, without a jury.

*Green & Comstock*, for the appellants.

*Martin A. Knapp*, for the respondents.

TALCOTT, P. J. :

This case, which was submitted without oral argument at the last term of this court, is a case in which the complaint is, ostensibly, for the purpose of having an accounting by and between Allen Munroe and the plaintiffs in regard to certain moneys received, and balances due from said Munroe, as the agent of the plaintiffs, and incidentally to have certain city taxes levied on the property of the plaintiffs by the city authorities of Syracuse, in the year 1875, and also certain county and State taxes levied in the same year, by the supervisors of Onondaga county, declared to have been paid and satisfied, and to restrain the city and county authorities from taking any measures to collect the said taxes.

Without going into unnecessary details, the facts of the case may be summed up as follows : The plaintiffs are the owners of three stores on South Salina street, in the city of Syracuse.

Allen Munroe was, in the year 1875, and for some time before then, had been the agent of the plaintiffs (who are married women residing in the city of New York), to collect the rents, see to the necessary repairs, and pay the taxes on the said three stores, and had been accustomed, before any fees for the collection of such taxes became due, to give his checks on certain banks in Syracuse for the amount of taxes levied on said premises, together with other premises, for which he was the agent, and premises in said city, of which he was himself the owner, in order to avoid paying the fees for collection which, by law, would become due, from time to time, if payment was delayed.

In the year 1875 the sum of $890 was assessed on the said premises, as, and for city taxes for that year, and a further tax of $723.14, as, and for the State and county taxes. The said city tax became due and payable to the treasurer and tax receiver of the said city on or about the 16th day of October, 1875, and was payable to the treasurer and tax receiver of said city, and the State and county taxes became due and payable to the same officer on or about the 5th day of January, 1876.

On the 16th day of October, 1875, Allen Munroe made and delivered to the said treasurer and tax receiver three certain checks on the Third National Bank of Syracuse, bearing date on that day, and drawn by said Munroe to the order of the said treasurer and tax receiver, two for the sum of $2,500 each, and one for the sum of $3,752.26, being the full amount of city taxes for that year upon property, of which said Munroe was owner or agent, including the said premises belonging to the plaintiffs.

The said treasurer and tax receiver, upon receiving said checks, made entries upon the city tax-rolls, indicating that the city tax, upon the property of which Munroe was owner, or for which he was agent, including the plaintiffs' three stores, were paid, and on the evening of the same day sent to Munroe, by mail, a receipt for the same.

At the time said checks were delivered to the said treasurer and tax receiver they were not good, there being then no funds in the bank wherewith to pay the same, and it was then agreed between said Munroe and said treasurer and receiver that the same were not immediately to be presented for payment, and

said Munroe, at the time, indicated by a pencil memorandum on said checks the time when they were severally to be presented for payment, viz. : one check for $2,500 on the tenth of November, the other on the tenth of December, and the larger check on the 20th of December, 1875.

The said tax receiver thereupon retained the said checks, without presenting the same for payment, until the tenth of November, when Munroe requested him not to present the $2,500 check which, by the memorandum, was to have been presented on that day, as he, Munroe, was not yet prepared to meet the same, and Munroe promised to inform the said tax receiver when he would be prepared to meet the same. The check for $2,500, which was by the memorandum to be presented on the tenth of December, was paid at some time during the month of December. Neither of the other checks were ever presented for payment, but were from time to time retained by the said tax receiver at the request of said Munroe, and upon his statement that the same were not then good, but that he would notify the said tax receiver when to present the same, but he was never so notified.

On the 5th day of January, 1876, when the State and county tax became payable, Munroe made and delivered to the said treasurer and tax receiver his check, drawn to the order of said tax receiver on the same bank, for $6,802, that being the amount of the State and county taxes, payable on that day, for the year 1875, upon the property of which said Munroe was owner or agent, including the said premises belonging to the plaintiffs, and the said tax receiver then made an entry on the tax-roll indicating that the said State and county taxes were paid, but no receipt was then or ever given to Munroe for the same. That when the last mentioned check was given it was understood that the same was not good for want of funds in the bank, but was to be held for the accommodation of Munroe until he could make the same good, when he would notify the tax receiver to present the same, but Munroe never gave such notice and said check was never presented.

On the 21st of February, 1876, said Allen Munroe failed, and made an assignment of all his property for the benefit of his creditors, and has ever since continued to be wholly insolvent.

On or about January 6, 1876, Munroe, still acting as the agent of the plaintiffs, transmitted to them by mail his account as their agent, in which account he credited himself with the payment of the said city, State and county taxes on the said real estate of the plaintiffs for the year 1875, and the plaintiffs settled with him on the said statement of account, believing the same to be true.   But the receipt for city taxes, which had been sent to Munroe, was not exhibited to the plaintiffs, nor did they know of the same till after his assignment, or that the tax receiver had taken and held the checks of Munroe for the said taxes on their property.

There was no agreement that the said checks should be received or accepted at the risk of the city of Syracuse, or its said tax receiver, or that the same should be received and accepted in payment or discharge of any of the taxes for which they were given. Munroe had given his checks in a similar manner in previous years, and they had been retained by the tax receiver until they were actually paid.   None of the checks given for the taxes of 1875 have been paid, except the check for $2,500, due, according to the memorandum, on the 10th of December, 1875, which sum of $2,500 was, after his failure, by arrangement with Munroe and his assignees, and the tax receiver, distributed and applied *pro rata* on all the city taxes for which the checks had been given, the amount credited to the plaintiffs on said city taxes under this arrangement being the sum of $254.22.

It did not appear that the plaintiffs had ever, previous to the settlement of their said account with Munroe, been cognizant of the entries made by the tax receiver on the rolls, indicating that the said taxes for the year 1875 had been paid.   None of said city, State or county taxes on the plaintiffs property have, in fact, been paid, except by the application of the said $254.23, part of the said $2,500 which has been applied in satisfaction of that amount of city taxes.

On the 23d of May, 1876, the said State and county taxes of the plaintiffs were returned to the defendant Robert Hewitt, treasurer of Onondaga county, as uncollected, and the said treasurer and tax receiver of the city of Syracuse was thereupon discharged from all liability on account thereof.   The assessment of

these taxes was originally made to Ann McLanahan, but on the trial it was admitted that it was within the time and in the manner required by law reassessed to the plaintiffs jointly.

Robert Hewitt is made a party defendant in the suit as treasurer of the county of Onondaga, and it is alleged that he has advertised the said premises of the plaintiffs for sale for the payment of the county taxes for the year 1875, and the complaint asks for an injunction against such proceeding ; and the said county treasurer, among other things, sets up with suitable allegations of matters of fact, and by way of counter-claim, under certain statutes applicable to the case, the fact that the State and county taxes for the year 1875, assessed to the plaintiffs, are outstanding and unpaid, and demands a judgment in his behalf for the amount of said State and county taxes.

Munroe made no answer to the complaint.   On a trial at the Special Term of Onondaga, the complaint was dismissed as to the city of Syracuse, the injunction dissolved as to the treasurer of Onondaga county, and judgment ordered in his favor on the counter-claim, and authorizing the action to be continued, if the plaintiffs so desire, against Allen Munroe for an accounting.

In the briefs which have been submitted on both sides it seems to be assumed that the treasurer and tax receiver was an agent of the city of Syracuse and of the county of Onondaga, so as to bind those municipalities by his acts and omissions in regard to his official duties, in the same manner as though he had been the agent of a private person, and that his acceptance of the checks of Allen Munroe, the agent of the plaintiffs, added to the circumstance that the plaintiffs had settled with him on the basis of his account, as stated, on the 6th day of January, 1876, on the assumption that he had, in fact, paid the taxes of the year 1875, amounts in legal effect to the payment and satisfaction of such taxes, and estops the city of Syracuse and the county of Onondaga from claiming the payment thereof from the plaintiffs.

We do not so understand the rule of law applicable to this subject.

It was held in *Lorillard* v. *The Town of Munroe* (12 Barb., 161) that " there is nothing in the character of town officers, or in the duties and responsibilities which they impose, or in the relations which the persons selected to execute them bear to their towns

respectively, or in the terms of the statutes relating to this subject, which will warrant the conclusion that the Legislature intended to make such officers the agents of the towns, so as to render the towns liable to actions, in their corporate capacity, for the mistakes, or nonfeasance or misfeasance or malfeasance of such officers."

They are officers of the State and receive their instructions from the statute. True, the electors or other authorities of the town elect their assessors and, of course, have the authority to change them at the times provided by law, but it cannot be pretended that this constitutes the relation of principal and agent. They can neither bind them by instructions, nor revoke their powers during the continuance of their term of office. The case of *Lorillard* v. *The Town of Munroe*, went to the Court of Appeals, where the decision was affirmed and reported in 11 N. Y., 392, DENIO, J., delivering the opinion of the court, says at page 395 of the case : "I am of opinion, therefore, that the assessors and collectors of taxes are independent public officers, whose duties are prescribed by law, and that they are not, in any legal sense, the servants or agents of the towns; and that the towns, as corporations, are not responsible for any default or malfeasance in the performance of their duties." The same point was decided in *The People* v. *The Supervisors of Chenango* (11 N. Y., 563). This principle has so generally been acquiesced in that few cases have been presented for judicial decision, in which it has been claimed that municipal bodies are liable for the acts or omissions of a collector of taxes, in regard to the taxes which he is authorized to collect. It seems to be generally conceded that payment of taxes must be made in the manner authorized by law, and that any private arrangement between the officer authorized to collect the taxes and the taxpayer has no force, by way of operating to discharge the taxes. Any other rule would manifestly be attended with great public inconvenience. The payment of taxes must be made in money. (*Sawyer* v. *Springfield*, 40 Vt., 305; *Richard* v. *Stogdale*, 22 Ind., 74.) Consequently the tax receiver, in this case, has no authority to receive the post payable checks of Munroe, the plaintiffs' agent.

If a collector takes a town order in payment of taxes it must

be regarded as a personal and not an official transaction. (*Sawyer* v. *Springfield, supra.*) So, payment of taxes in an illegal currency is a nullity, and, notwithstanding a collector has agreed to, and has received such funds in payment, he may proceed to collect the taxes as in other cases. (*Richards* v. *Stogdale, supra.*)

In *Elliott* v. *Miller* (8 Mich., 132), where a tax collector had agreed to receive in payment of taxes a draft of his creditors on himself, it was held not a valid payment, as taxes are due to the public, not to the collector individually, and claims against him are not a legal tender or off-set against the taxes. Similar is the duty of a sheriff, though only the agent for a private party, but still whose duties are enjoined by law. A sheriff cannot discharge an execution without payment, and if he returns an execution satisfied, upon receiving the defendants note instead of money, it is no satisfaction of the judgment or execution. (Allen on Sheriffs, 144; Crocker on Sheriffs, § 420; *Bank of Orange Co.* v. *Wakeman,* 1 Cowen, 46; *Mumford* v. *Armstrong,* 4 id, 553.)

We are, therefore, of the opinion that the authorities relied upon by the plaintiffs to show that the reception of the checks of Munroe operated as a payment and satisfaction of the taxes, payable on the plaintiffs premises, are wholly inapplicable.

That the treasurer and tax receiver had no authority to receive anything but money in payment of the taxes, and that his agreement to receive anything else was void, and that all the taxes charged against the plaintiffs said premises for the year 1875, except the sum of $254.22, which was actually received in money, and appropriated to the discharge of the city taxes, are still unsatisfied.

But we think that, as between Munroe and his assignee and the plaintiffs, the $2,500 collected on the check, which was paid on the 10th of December, 1875, should be applied in satisfaction of such of the taxes as were due and unpaid upon the land of such parties as Munroe assumed to pay the taxes of 1875 upon, as the agent of other parties; whereas, as we understand the case, the said $2,500 was distributed amongst all the taxes which Munroe assumed to pay upon, whether as agent or otherwise *pro rata,* thus including the land owned by himself. But the case contains no elements from which we can determine what the proportionate amount proper to be applied to the plaintiffs taxes

would be, distributing them upon this principle. The judgment, therefore, so far as it is based on the idea that only $254.23 of the plaintiffs city taxes have been paid, is erroneous, and we therefore reverse the judgment, so far as the application of the $2,500, paid to the tax receiver, is concerned, and order a new trial for the purpose of readjusting the application of the payment in accordance with the principle, above stated, by dividing it *pro rata* amongst the lands for which Munroe acted as agent, excluding those owned by him.

The judgment should be reversed, a new trial ordered, with costs of the appeal to abide the final award of costs in the action.

Smith and Hardin, JJ., concurred.

Ordered accordingly.