## PLUMB *v.* BATEMAN.

APPEALABLE ORDERS; CREDITOR'S BILLS, NECESSARY PARTIES TO;
EXECUTORS AND ADMINISTRATORS; ADMINISTRATION;
EQUITY PRACTICE; DISCOVERY; SERVICE
BY PUBLICATION.

1. The refusal of the court below to vacate an order of publication will not in general involve the merits of the action within the meaning of Sec. 772, R. S. D. C., but where the order of refusal reaches the question of the jurisdiction of the court and its right to proceed with the suit, it is appealable.

2. In a creditor's bill filed for the purpose of subjecting the real estate of a decedent to the payment of his debts, the general rule is that the executor or administrator is a necessary party; but when there are no personal assets of the decedent, and consequently no qualified executor or administrator, such a bill is maintainable without the presence of an executor or administrator.

3. The courts of this District will not take judicial cognizance of foreign administration of a decedent's estate ; but, for the pur-

poses of a creditor's suit by resident creditors against the real estate of a decedent located here, will, if the bill alleges that he left no personal property here and that there was no administration in this jurisdiction, assume that there are no executors or administrators.

4. The complainant in a bill seeking discovery from an interested party should charge in his bill that the facts are known to the defendant, and ought to be disclosed by him, and that the complainant is unable to prove them by other testimony.

5. An order of publication cannot, under R. S. D. C., Sec. 787, issue upon a bill for discovery.

6. A suit by a simple contract creditor of a decedent to subject the decedent's real estate to the payment of the debt, is a suit in which an order of publication may issue under R. S. D. C., Sec. 787.

7. An order of publication in an equity suit is irregular where the subpœna is returned "not to be found," before the return day of the writ.

No. 126. Submitted December 5, 1893.—Decided January 2, 1894.

HEARING on an appeal by the defendants from an order of the Supreme Court of the District of Columbia, holding an equity term, overruling a motion to vacate an order of publication and to quash any constructive notice thereunder. *Reversed.*

The COURT in its opinion stated the case as follows:

This is a suit by bill in equity to reach the real estate of a deceased person and to subject it as assets to the payment of his debts; and also for a discovery as to the extent of those assets, for an injunction, the appointment of a receiver, an accounting and general relief; and the appeal is by the defendants from an order of the court below refusing to vacate an order of publication issued against the defendants, as non-residents of the District of Columbia, and not to be found therein.

Arthur E. Bateman, Douglas Green, Richard G. Murphy and Harvey Durand, were partners, carrying on business in the city of New York under the firm name of Green & Bateman, and in the city of Washington under the firm name of Bateman & Company. On September 10, 1887, they entered into an agreement with Preston B. Plumb, then a Senator of the United States from the State of Kansas, with

reference to the construction of a certain railroad in the State of Virginia, in consequence of which it is alleged the partnership made advances of money on account of Plumb, and at his request, amounting to the sum of $180,000, and Plumb became their debtor, as they claim, to that amount. On account of another transaction, although connected to some extent with the same enterprise, they claim that he became indebted to them in an additional sum of $114,000. Plumb died on the 20th of December, 1891, leaving these debts unpaid, and leaving a will whereby he devised and bequeathed his estate to his wife and children, some of whom are minors, and whereby he constituted his wife and his oldest son as his executors. The will was probated at his home in the State of Kansas, and letters testamentary thereon were issued to the executors by the proper probate court in that State.

What the property was which was left by the deceased does not appear. It is alleged that his personal estate was insufficient to pay his debts, or even the debts claimed to be due from him, as stated, to Bateman and his associates. At the time of his death, he was the owner of some interests in lands in the District of Columbia, only one of which is specified with any kind of definiteness.

The firm of Green and Bateman, and Bateman and Company became insolvent, and on December 30, 1890, made an assignment to one John A. Garver for the benefit of their creditors.

The present bill was filed on January 27, 1892, by the partners and their assignee, Garver, to reach the real estate of Plumb, in satisfaction of their claim. It states the foregoing facts; seeks discovery from the defendants of all the assets, real and personal, left by Plumb, and prays process against the executors of his will, and against the other defendants, his children, who are devisees and legatees under the will. Several of the defendants are minors; and all of them are residents of the State of Kansas.

Subsequently to the filing of the bill, and before the ser-

vice of any process, the bill was amended by striking the name of Durand from among the number of complainants, and inserting it as a defendant. But it is not conceived that this alteration is of any consequence in the present inquiry.

Subpœnas to answer were issued on April 30, 1892, and returned the same day by the marshal with the return "not to be found." Then, on May 7, 1892, an order of publication was procured against all the defendants, except Durand, which was in the usual form as required by the statute and by the rules of the Supreme Court of the District of Columbia, and by which the defendants were required to enter their appearance on or before the first rule day occurring forty days thereafter, under penalty of having the cause proceed against them as by default, if they failed to appear; and the purpose of the bill was stated in the order, as required by the rules of the court. This order was published in the Washington Law Reporter, but in no other paper; and a copy was transmitted by mail to each of the defendants.

On October 4, 1892, the defendants appeared specially, and moved to vacate this order of publication, and to quash any constructive service thereunder upon the defendants. And they assigned four grounds for their motion: 1. Because the order on its face did not provide for its publication; 2. Because the rules of court were not complied with in the publication; 3. Because the subpœnas issued on April 30 had been improperly returned on the same day, in violation of the rule of court which provided that the return days of writs of subpoena should be "the next rule day occurring after ten days from the time of issuing thereof"; 4. For other reasons apparent on the face of the record.

The court in special term denied the motion; and from its order an appeal was taken to the General Term, and that appeal has been transferred to this court under the law.

*Messrs. Shellabarger & Wilson* and *Mr. Wm. F. Mattingly* for the appellants:

1. In order to obtain jurisdiction of defendants under con-

structive service by publication all provisions of law must be strictly complied with. *Galpin* v. *Page*, 18 Wall., 350, 369. See Secs. 787 and 788 R. S. D. C., and also, Equity Rules 8 and 20.

The evidence that the party cannot be found within the jurisdiction, which is the basis of the order of publication, is the return of the marshal to that effect. It is not that the defendant is a non-resident, but, in the language of the statute (Sec. 787), that he " cannot be found," which authorizes publication. He may be a non-resident, and yet may come into the jurisdiction of the court while the process under the rule is in the hands of the marshal. Hence the importance of the specific return day of the writ and its retention by the marshal until that time. In this case process was issued and at once returned. Evidently no effort was made by the marshal to ascertain whether any of the defendants were within the jurisdiction or not. Certainly he did not retain the writ until the time required by the rule to find out whether they would be here during that time. The return of the summons "not to be found" required by the statute was intended for some purpose; it meant a due, lawful return; it meant time within which to serve and that no order of publication should be made until the expiration of that time. Those safeguards were wholly ignored in this case; and under the strictness of the principle, properly applicable in all such cases, the order was a nullity and ought to be quashed.

2. The court below has not jurisdiction either of the parties or the subject matter embraced in the bill. See R. S. D. C., Sec. 787; R. S. U. S., Sec. 738; R. S. U. S., Sec. 739; 18 Stats., 470, Sec. 8; 24 Stats., 552; 25 Stats., 434; *McCormick* v. *Walthers*, 134 U. S., 43 ; *In re Louisville Underwriters*, 134 U. S., 488, 491-2.

3. The liability here sought to be enforced is in the nature of a personal liability against the defendants, as distinguished from a proceeding to enforce a specific lien against or upon specific property, and is, therefore, a proceeding which, by

Section 739 of the Revised Statutes, is prohibited from being brought in any other district than that whereof the defendant is an inhabitant. None of these defendants, as shown by the bill, are inhabitants of the District of Columbia, but are residents and inhabitants of the State of Kansas, and the executors, herein, received their representative character from the courts of the State of Kansas; and, hence, the bringing of this suit in this District is prohibited by Section 11 of the Judiciary Act of 1789 (1 Stats., 78), re-enacted in Section 739 of the Revised Statutes. *Toland* v. *Sprague*, 12 Pet., 300; *Picquet* v. *Swan*, 5 Mason, 35; *Butterworth* v. *Hill*, 114 U. S., 128; *Day* v. *Hayward*, 20 How., 213; *Herndon* v. *Ridgeway*, 17 How., 424; *Ex parte R. R. Co.*, 103 U. S., 794; *Chittenden* v. *Darden*, 2 Woods, 437; Field's Fed. Cts., Sec. 203; *Pennoyer* v. *Neff*, 95 U. S., 714; *Pacific R. R.* v. *Mo. Pac. Rwy.*, 1 McCrary, 647; *Hart* v. *Sansom*, 110 U. S., 151; *Day* v. *Rubber Co.*, 1 Blatch., 628; *Dormitzer* v. *Ill. Bridge Co.*, 6 Fed. Rep., 217; *Shainwald* v. *Lewis*, 5 Fed. Rep., 510.

4. The executors of the estate of Preston B. Plumb, deceased, are indispensable parties defendant to this creditor's bill, and no bill, prosecuted by a general creditor, can be prosecuted to judgment in the absence of such executors, or other legal representatives of the estate prosecuted. *Conolly* v. *Wells*, 33 Fed. Rep., 205; Beach on Eq. Jur., Sec. 1028; *Postlewait* v. *Howes*, 3 Ia., 365; *Tyler* v. *Bowie's Adms.*, 4 H. & J., 334; *Baltimore* v. *Chase*, 2 G. & J., 376. Because this is so, complainants have made the executors, as well as the heirs and legatees, parties defendant. They disclose in their bill, as we have seen, that these administrators received their appointment from the State of Kansas, and that no administration, ancillary or otherwise, has been granted in this District. It also appears by the bill that *all* the defendants reside in the State of Kansas, and are, therefore, non-residents of this District. This being so, the following cases show the impossibility of proceeding in this case, owing to the absence of jurisdiction over the executors of Senator

Plumb's last will—the fatal objection to the jurisdiction of the court in the present suit is that it is one brought against executors sued in their representative capacity in courts other than in the State where they were appointed: *Vaughn* v. *Northup*, 15 Pet. 1 ; *Taylor* v. *Benham*, 5 How., 262 ; *Aspden* v. *Nixon*, 4 How., 467 ; *Stacy* v. *Thrasher*, 6 How., 44 ; *Johnson* v. *Powers*, 139 U. S., 156 ; *Noonan* v. *Bradley*, 9 Wall., 394 ; *Reynolds* v. *Stockton*, 140 U. S., 254 ; *Judy* v. *Kelly*, 11 Ill., 211 ; *McGarvey* v. *Darnell*, 134 Id., 367 ; *Lawrence* v. *Nelson*, 143 U. S., 215.

5. Neither Sec. 738 R. S. U. S. nor Sec. 787 R. S. D. C., or the acts amendatory thereof, embrace the case at bar and authorize substituted service by publication. "A legal or equitable lien upon or claim to the title to real or personal property within the District," which is named in said Section 738, takes in no other classes of lien or claim than such as are specifically given by contractual or statutory obligation (such, for example, as mechanics' lien) creating a specific lien upon or claim to specific property. *Shainwald* v. *Lewis, supra ; Dormitzer* v. *Ill. Bridge Co., supra ; Ins. Co.* v. *Bangs*, 103 U. S., 435 ; *Woodbridge* v. *McKenna*, 8 Fed. Rep., 669 ; *Pac. R. R.* v. *Mo. Pac. Rwy.*, 3 Fed. Rep., 772 ; *Ellis* v. *Reynolds*, 35 Fed. Rep., 394 ; *Borer* v. *Chapman*, 119 U. S., 587.

No decisions, other than those mentioned are known which throw any light upon the question whether Section 787 of the Revised Statutes for the District of Columbia is *broader* in the classes of subject matter which it takes in and seeks to subject the property to the payment of claims than is Section 738.

6. Another distinct and conclusive view of the case at bar shows its exclusion from being prosecuted under either said Section 787 or said Section 738 and its amendments. The land and territory within this District which was originally a part of the State of Maryland is, by the act of the 27th of February, 1801 (2 Stats., 103), Section 1, made subject to the laws of the State of Maryland as they existed at the date of

said act, and such laws are continued in force, in said part of this District, except in so far as they have been subsequently changed by acts of Congress. The laws so continued in force in this District include, not merely the statutes of Maryland, but include, as well, the principles of the common law which the courts of Maryland recognized, at said date, as being in force in Maryland. *Kendall* v. *United States*, 12 Pet., 524; *United States* v. *Schurz*, 102 U. S., 394, and, also, the English statutes which the Maryland courts then recognized as in force in that State. *Cathcart* v. *Robinson*, 5 Pet., 264. In *Campbell's Case*, 2 Bland., s. p. 209, the syllabus thus states the relation, in which, by the laws of Maryland, creditors of the estate of a deceased stood, at and after the date of the said act of 1801, to the assets of the deceased's estate, as to the matter of having a lien on such assets; "Although bond and simple contract creditors, as such, have no lien on the real estate of their debtor, yet no alienation of the heir or devisee to their prejudice, *after a creditor's suit has been commenced*, can be sustained." In the case of *Coombs* v. *Jordan*, 3 Bland, 284, the headnote states what, as to the present point, is decided by that case. It is as follows: "In the case of an obligee against the heir of the debtor in respect to real estates descended, *the lien attaches upon said estates from the date the suit was commenced.*" There was not, therefore, in Maryland, in 1801, and has not been since in this District, any lien upon the real estate of a debtor, inuring by operation of law, in favor of his general creditors prior to the commencement of the creditor's bill suit. The authorities already cited show that no lien, created by the bringing of the suit, comes within said Section 738, nor, indeed, within Section 787 of the Revised Statutes for the District of Columbia. *Dormitzer* v. *Illinois Bridge Co.*, 6 Fed. Rep., 217. Hence, no matter what the law may be, in the regard in question, in *other* States, general creditors obtain, at and after the death of their debtor, in the District of Columbia, no lien, in virtue of a resulting trust or otherwise, upon the real estate of their

debtor. And for this reason, also, the present suit is not within the provisions of Section 738, and its amendments, or Section 787 of the Revised Statutes for the District of Columbia.

*Mr. H. H. Wells* and *Mr. Enoch Totten* for the appellees.

1. The order denying the motion to quash is not an appealable order. Section 772, R. S. D. C. An order denying a motion to quash an order of publication as against absent defendants cannot involve the "merits" of the action. Such an order can in no way affect the *merits*. It cannot possibly reach any meritorious part of the case.

2. The question of the jurisdiction of the equity court cannot arise in the disposition of this motion. The sole question now here is whether or not the proceedings to substitute publication for personal service were in compliance with the statute and rule of court on that subject. If the question is before the court now, then, we say, that the administration of the assets of deceased persons is one of the most firmly established branches of the concurrent jurisdiction of an equity court. Where the property of a deceased person comes into the hands of an executor or other person, a chancery court will always interfere, if necessary, and see to it that the property is applied to the payment of the debts of the deceased, and that the surplus is disposed of according to law. This is upon the ground that such property is a trust, and it is one of the first duties of a court of equity to see to the proper execution of trusts (see this subject discussed in 1 Story's Eq. J., § 530 to 547). This jurisdiction should be exerted more especially where the debt was contracted in this District, and valuable property is found here. Why should complainants be sent to Kansas under such circumstances? Further than this, we submit to the court that this question has been settled, so far as this District is concerned, for many years. *Offutt* v. *King*, 1 McArthur, 312; 1 Story's Eq. Juris., § 530 to 547; *Kennedy* v. *Creswell*, 101 U. S., 641.

Mr. Justice MORRIS delivered the opinion of the Court:

The refusal of a court to vacate an order of publication cannot in general be regarded as involving the merits of an action so far as to authorize the appeal from the decision for which provision is made by Section 772 of the Revised Statutes of the United States for the District of Columbia. But the order of refusal, under the peculiar circumstances of the present case, appears to reach to the question of the jurisdiction of the court and its right to proceed with the suit. It cannot, therefore, be regarded in this instance as a merely interlocutory order.

Undoubtedly it is not the law as claimed in argument in this case, that a probate court can draw to itself the administration of all the assets, both real and personal, of a decedent, whether situated within the territorial judisdiction or outside of it. It is not entirely true, even of the personal estate, that it is necessarily all drawn to the place of the domicile of the deceased, and to the administration there granted. An executor or administrator is neither entitled to sue nor liable to be sued outside of the jurisdiction which has conferred his authority upon him, and to the courts of which alone he is amenable, unless there is express statutory provision to permit such suit by the legislative power of the jurisdiction where the suit is sought to be maintained. And while it is not now unusual to find statutory enactments in many of our States permitting foreign executors and administrators the right to sue, it still remains the universal policy to preserve local assets for the satisfaction in the first instance of local claims, and to allow only the residuum to be transmitted to the place of the principal administration at the domicile of the deceased.

But whatever may be the relaxation of the law in regard to the collection of the personal assets of the decedent, we certainly cannot concede to the probate court of a foreign jurisdiction, a power over real estate which we deny to our own court of probate. We cannot concede to any foreign court whatever, whether of general or of limited jurisdiction,

the right to administer as assets of a decedent, the real estate whereof he died seized in the District of Columbia, or in any manner to exercise authority over such real estate. It is very true that, as determined long ago by Lord Hardwicke, in the case of *Penn* v. *Lord Baltimore*, 1 Vesey, 444, a court of equity may by its decree, indirectly affect the title to real estate situated outside of its territorial jurisdiction, when it has jurisdiction of the persons of the parties in interest and is entitled, in proper cases to enforce obedience to such decree by compulsory process *in personam*. But we are not advised that it has ever yet been held in any case by any court that, in the administration of the assets of a deceased person, it could decree the sale of real estate situated outside of its territorial jurisdiction. It is at all events the law of the District of Columbia that real estate in this District is subject in such cases only to the decrees of a court of equity of the District. We deem it unnecessary to cite authorities in support of a position so elementary.

But the question of apparent difficulty in the case is this: Conceding, as it must be conceded, that only a court of equity in the District of Columbia has jurisdiction in the premises, it is argued that this jurisdiction may not be exercised in the present instance on account of the alleged impossibility of having proper parties to the suit. It is assumed that the executors of Plumb are necessary parties, without whom the suit cannot be maintained; that inasmuch as they are foreign executors, they cannot be sued, and cannot be made parties to any suit; and that therefore suit cannot be maintained at all.

If this argument be sound, it would follow that the real estate of the decedent in the District of Columbia could not be reached by any court in satisfaction of his debts. We can scarcely regard such a conclusion as correct, or the argument which leads to it as sound.

It is true, as a general rule, that in a creditors' bill filed for the purpose of subjecting the real estate of a deceased person as assets to the payment of his debts, the executor or

administrator is a necessary party. It was so held nearly two centuries ago in England in the case of *Knight* v. *Knight*, 3 P. Williams, 331; and it has been so held in Maryland and other States of the Union. *Tyler* v. *Bowie's Administrators*, 4 H. & J., 333; *Baltimore* v. *Chase*, 2 G. & J., 381; *David* v. *Grahame*, 2 H. & G., 94; *Carey* v. *Dennis*, 13 Md., 1; *Piper* v. *Tuck*, 26 Md., 208; *Lynn* v. *Gephart*, 27 Md., 547; *McDowell* v. *Cochran*, 11 Ill., 31; *Postlewait* v. *Howes*, 3 Iowa, 365; *Allen* v. *Simons*, 1 Curtis, 122. And such has been the settled practice of the District of Columbia during the whole century of its existence as a separate jurisdiction. *Bank of U. S.* v. *Ritchie*, 8 Pet., 128. The reason is because the personal estate of a decedent is the fund to which recourse must primarily be had for the payment of his debts, and the real estate can only be resorted to for that purpose when the personal assets are insufficient. The ascertainment of the condition of the personal estate and of its insufficiency is an essential preliminary in the determination of the necessity for recourse to the real estate, and consequently the executor or administrator of the personal estate is a necessary party in the investigation.

But while this is the general rule, it is subject to the qualification that if there are no personal assets, and consequently no qualified executor or administrator—for without assets there can not be administration, and without some preliminary showing of personal assets no administrator can be appointed or letters testamentary granted—in that event a creditor's bill may be maintained without the presence of an executor or administrator. The law does not require either that which is impossible or that which is nugatory; and in the case in which it would refuse administration for the want of personal assets to be administered, it cannot be that it would refuse to permit a suit to reach the real estate on the ground that there was no administrator to be made a party to the suit. *Birely* v. *Staley*, 5 G. & J., 432.

In the present instance there are, it is true, executors of the decedent, and those executors have been duly qualified

in the State of Kansas, and have entered upon the performance of their duties, and taken possession of the personal assets of the deceased in that State. But there is no administration of which we can take judicial cognizance. The administration in Kansas is non-existent so far as concerns the District of Columbia. Our courts cannot recognize the executors who have become qualified in that State, except in so far as they may, under our statute, bring suit here if they so desire, and there is occasion for them to bring suit. In the absence of administration in the District of Columbia, we are justified in assuming that there are no executors or administrators for the purpose of such suits as that now before us. For when a court of equity has determined that it cannot proceed with a creditor's bill against the real estate of a decedent until the executor or administrator of the personalty is made a party to the suit, it means an executor qualified or an administrator appointed within the jurisdiction who can be reached by the process of the court. Any other meaning of the rule would nullify the jurisdiction of the court.

In the case of *Milligan* v. *Milledge*, 3 Cranch, 220, the question was mooted, but not decided, whether it was necessary to proceed against an executor in one jurisdiction, and reduce a claim to judgment before proceedings upon the claim could be instituted against devisees and legatees in another jurisdiction. But since the time of that decision the policy of our jurisprudence, both State and Federal, has with great unanimity settled it that a creditor should not be required to go out of his own State to enforce his claims against a person who is not to be found therein, when there are assets or property of such person to be found within the jurisdiction. For this reason attachment laws have been enacted, and are to be found, we presume, in every State of our Union. The rights of residents as against non-residents are zealously guarded, when there is question of insolvency, or of assignments for the benefit of creditors. And it would be a strange anomaly if, when death has impressed a trust

upon both realty and personalty which there was upon neither while the owner lived, one of the class of persons for whose benefit the trust was intended should be compelled to seek a distant State or a distant country, and first require satisfaction from some personal representative when there was ample realty within his own jurisdiction.

In the case of *Noonan* v. *Bradley*, 9 Wall., 394, the Supreme Court of the United States, speaking through Mr. Justice Field, said: "Upon this question (the right of an administrator to maintain suit outside of the jurisdiction) the law is well settled. All the cases on the subject are in one way. In the absence of any statute giving effect to the foreign appointment, all the authorities deny any efficacy to the appointment outside of the territorial jurisdiction of the State within which it was granted. * * * The same doctrine is as applicable to the case of executors as to that of administrators; the right to sue in both instances depending upon the letters." And yet in the present case it is contended that, while under this decision it has no extra-territorial efficacy whatever, the appointment of a foreign executor or administrator is efficacious enough to block the wheels of justice in this jurisdiction, and in every jurisdiction outside of the place of the appointment. We cannot assent to the validity of this contention. We are of opinion that while it was improper to introduce into the present suit as parties the executors of the decedent who procured their letters only from the probate court in Kansas, it would be entirely proper to maintain in this District a creditor's bill in favor of resident creditors against the real estate of the decedent upon allegations to the effect that he left no personal property here, and that there was no administration within this jurisdiction.

Inasmuch, however, as the motion to vacate the order of publication is, in effect, a demurrer to the bill of complaint, it is proper to observe here that this bill in the shape in which it is presented can scarcely be maintained. It is a bill for discovery, as well as a creditor's bill for the sale of a specific piece of real estate. It is not quite apparent how the com-

plainants expect discovery to be enforced when there is no jurisdiction of the persons of the defendants, and when most of those defendants are minors, incapable, in the proper sense of the term, of making discovery in equity. Moreover, discovery is sought indiscriminately from executors, devisees, and legatees of assets, real and personal, in the District of Columbia and outside of it, when it is not apparent that the executors have anything to do with the realty, or the devisees with the personal estate. Nor is it made to appear why discovery is sought at all. Says the Supreme Court of the United States in the case of *Brown* v. *Swann*, 10 Pet., 497: " The rule to be applied to a bill seeking discovery from an interested party is, that the complainant shall charge in his bill that the facts are known to the defendant, and ought to be disclosed by him, and that the complainant is unable to prove them by other testimony." There can be no discovery here as to the personal assets, because there is no local executor or administrator to make it, and the foreign executors cannot be sued or compelled to account to any court in the District of Columbia. And with regard to the real estate, the land records of the District are as open to the complainants as they are to the defendants, unless the interests have been kept secret, and there is no allegation to that effect.

The bill of complaint, therefore, as a bill of discovery is demurrable and cannot be sustained. Neither can an order of publication issue upon a bill for discovery. It is plainly not of the class of suits in which an order of publication is authorized by the statute.

But if we regard as sufficiently specific the description of the only piece of real estate which the bill of complaint has attempted to designate with anything like precision—and of this there is grave doubt—the bill may be sustained as a creditor's bill to subject specified real estate to the payment of debts, while disregarded as a bill for discovery; and upon such creditors' bill an order of publication against non-resident heirs or devisees would be proper. The statute ex-

pressly provides, "that publication may be substituted for personal service of process upon any defendant who cannot be found in suits for partition, divorce, by attachment, for the foreclosure of mortgages and deeds of trust, and for the enforcement of mechanics' liens and all other liens against real or personal property, and in all actions at law or in equity which have for their immediate object the enforcement or establishment of any lawful right, claim or demand to or against any real or personal property within the jurisdiction of the Court." Rev. Stat. U. S. for D. C., Sec. 787. The claim of the complainant is, in the very words of the statute, a claim against real property within the jurisdiction; and, therefore, expressly within the provisions of the statute.

It is argued that creditors of a decedent have no lien against the real estate until the filing of the bill; that suits that create a lien are not suits to enforce a lien; and that, therefore, creditors' bills are not within the meaning of the statute. But even if creditors' bills were not within the purview of the last clause of the statute, and were not actions in equity to enforce a lawful claim against real estate, this argument would lead to an illiberal and unreasonable construction of the law. While it is true that there is no express lien in favor of creditors against the real estate of a decedent until the filing of the bill for the purpose, the law charges the realty as well as the personalty, with a trust for the payment of debts; and the heir or devisee takes the realty subject to that trust. It is to enforce that trust, which may be regarded as a general or tacit lien upon the property, that the creditor files his bill, and thereby acquires a specific lien. *Watkins* v. *Holman*, 16 Pet., 25 ; *Miller* v. *Sherry*, 2 Wall., 237.

There is one other question to be considered in this case. Section 788 of the Revised Statutes of the United States for the District of Columbia requires that "no order for the substitution of publication for personal service shall be made till a summons for the defendant shall have been issued, and returned 'not to be found.'" A summons was issued in

this case, and returned "not to be found" on the same day
on which it was issued, notwithstanding that the rule day
for the return of writs did not occur for more than ten days
afterwards. And thereupon, within seven days afterwards,
the order of publication was made, and immediately pub-
lished. This we regard as a grave irregularity. It may be
that it was no more than an irregularity. But when the
validity of such service of process is directly questioned in
the suit in which it is issued, we cannot regard a practice of
twenty years, if there has been such practice, as any justifica-
tion of it. The legislative power evidently did not mean
that the issue of a summons and its due return as preliminary
to an order of publication, should be an empty formality;
and such it would be under the practice adopted in this case.
Why should the summons be issued at all, if it is to be
returned immediately without any actual attempt to serve it,
or any time given within which to serve it? The
attempt to serve the process might be futile; the fact of
non-residence stated in the bill might indicate in advance
the futility of any such attempt. But it is very evident that
Congress did not intend to leave to the complainant, either
by the statements of his bill, or by the verbal direction of his
solicitor to the marshal, to determine the question of the
feasibility of the service of a writ or to dispense with the
attempt to serve it. Congress evidently meant that there
should be some opportunity for a *bona fide* attempt to serve
the writ. And yet, under this practice, if the defendants
actually came within the jurisdiction at any time before the
rule day the marshal would have been precluded by his re-
turn from any further action. A writ that has been duly
served, as prescribed by its terms, may be returned at any
time after its service; for the reason that the purpose of its
issue has been accomplished, which is to give formal notice
to the person required to respond to it. But when the
marshal is given ten days or upwards to find a person and to
notify him of a pending suit, he does not perform his duty
by informing the court on the first day, five minutes or less

after the order is placed in his hands, that he has been unable to find the person. On the face of the process, it is apparent in such a case that the marshal has made no attempt whatever to serve it, and the proceeding is plainly collusive, although not intentionally a violation of law.

It is irregular to return before the return day a writ not served personally on the party designated in it. *Hinman* v. *Borden*, 10 Wend., 367. And inasmuch as all statutory proceedings for the substitution of constructive notice in the place of the personal service required by the common law must be strictly followed, (*Pennoyer* v. *Neff*, 95 U. S., 714; *Thompson* v. *Whitman*, 18 Wallace, 457; *Cooper* v. *Reynolds*, 10 Wallace, 308), we cannot sanction an irregularity like the present in the face of a direct attack upon it by a motion to vacate the order of publication. On the ground of this irregularity and in consequence of the defects in the bill of complaint, this motion should have been sustained.

We have deemed it proper thus minutely to enter into the investigation of the various questions involved in this case, for the reason that they are so intertwined that a decision merely vacating the order of publication for irregularity would have left unsolved some points of practice, as well as questions of jurisdiction, that should be determined without unreasonable delay.

For the reasons stated, *the order of the special term in this cause will be reversed, and the cause remanded to that court, with directions to vacate the order of publication and the return by the marshal of the summons issued in the cause, and with leave to the complainants to amend their bill as they may be advised, and for such other proceedings as may be proper, not inconsistent with this opinion.*