NEW-YORK,<br>May, 1830.<br>Saunders<br>v.<br>Springsteen.

---

## SAUNDERS and others *vs.* SPRINGSTEEN.

Where a person occupies *one entire farm*, and a division line between two adjoining towns passes through the same, such farm can be assessed for taxes only in the town where the owner or occupant *resides*, although the farm comprises portions of *distinct lots*, and such lots lie in *different towns*. The words *farm* and *lot*, as used in the act of 1823, in this particular, are synonymous.

ERROR from the Niagara common pleas. Springsteen sued Saunders and two others, assessors of the town of Lewiston, in a justice's court, in an action of *trespass* on the *case*, for assessing certain lands and subjecting the same to a tax in the town of Lewiston, whereas it was alleged the same were not taxable in that town, but in an adjoining town, viz. Cambria, where the plaintiff lived. A judgment was rendered by the justice in favor of the plaintiff for $3,33, the amount of the tax collected of the plaintiff in the town of Lewiston. The defendants appealed to the Niagara C. P., and on the trial in that court, it appeared that previous to 1818

the plaintiff was the owner and occupant of a tract of land
containing 150 acres, situate in the town of Cambria, 100
acres thereof being part of a tract known as lot No. 26
of a larger tract, and the remaining 50 acres being part of
another lot of the same large tract, known as No. 34. In
1818, the town of Cambria was divided into two towns, part
being called Lewiston, and the residue retaining the name of
Cambria; the division line between the two towns being the
line between the two lots. The 100 acres. fell to the town
of Cambria, and the 50 acres to the town of Lewiston. On
the 100 acres was the dwelling house of the plaintiff, in
which he lived, and on the 50 acres was his barn. The
whole tract of the 150 acres was occupied, used and culti-
vated by the plaintiff as *one entire farm*, there being about 17
or 18 acres of cleared and improved land on the 50 acres,
and about 30 acres of improved land on the 100 acres. The
whole tract of 150 acres was assessed in Cambria, and yet
the defendants with a full knowledge of the facts, in 1826,
assessed the 50 acres in Lewiston, and the plaintiff. was com-
pelled to pay a tax there of $3,33. On the part of the de-
fendants, it was insisted that the 50 acres *being part of a lot
entire and distinct* from the *lot* in which the 100 acres were
situated, they had lawful authority to assess the same; and,
on the part of the plaintiff, it was contended that the 50 acres
*being part of one entire occupied farm* upon which the plaintiff
lived, the same could be rightfully assessed only in the town
where the defendant lived, which was Cambria, and not Lew-
iston. The court decided that the 50 acres could not legal-
ly be assessed in the town of Lewiston, and that the plain-
tiff was entitled to recover; to which decision the defendants
excepted. The jury found for the plaintiff with $3,33 dam-
ages, on which finding a judgment was entered.

*T. C. Love,* for the plaintiff in error.

*E. Ransom,* jun. for defendants in error.

*By the Court,* MARCY, J. The parties ask an opinion as
to the right of the plaintiffs in error to assess the 50 acres of
the defendant's land in the town of Lewiston. This de-

pends on the construction to be given to the eighth section of the act for *the assessment and collection of taxes*, (Laws of 1823, p. 391.) By this section it is enacted, that, " where the line between two towns divides any *occupied lot or farm*, the same shall be taxed in the town where the occupant lives, provided he or she lives on the lot; but if no person resides on the lot or farm as an occupant or owner, then the assessors of the respective towns may each of them tax the parts in their several towns." The object of this enactment appears to me to be very obvious, and the misconstruction of it has arisen, I apprehend, from the limited meaning which has been given to the word *lot* when standing alone and disconnected with the words *or farm*. If the word *lot*, has not as extensive an import as the expressions *lot or farm*, as used both before and after in the same sentence, then no effect whatever can by possibility be given to the words " *or farm.*" According to a sound rule of interpretation, such a result is to be avoided if it may be without doing violence to other parts of the law. It is not reasonable to suppose that the legislature meant to distinguish between a farm composed of one lot, and a farm composed of a part of two lots or of two entire lots. The same reasons which suggested the propriety of allowing the occupant or owner to pay the tax on the whole premises occupied by him in one town in the one case, would operate with equal force in the other. The laws on this subject, passed previous to 1823, directed the whole farm to be assessed to the owner residing thereon, in the town in which he lived. Such too is the provision in the Revised Statutes; and it has not been understood that there has been at any time a disposition to modify the tax law in this particular. It appears, by the revisors' report, that they considered the provision in the Revised Statutes, (vol. 1, p. 389, § 4,) so far as that section is applicable to the question before us, the same as the eighth section of the act of 1823. It may be proper to observe also, that no other construction was ever given to this section at the comptroller's office, except where the town line which divided a farm was also a county line.

NEW-YORK,
May, 1830.

Saunders
v.
Springsteen.

The fifty acres on which the defendant's barn was situate, was a part of his farm, and it was properly assessed by the assessors of Cambria, where the defendant lived; and the assessors of Lewiston erred in including it in their assessment.

Judgment affirmed.