PEOPLE ex rel. VAN RENSSELAER v. WEAVER. 133

Third Department, June Term, 1886.

Bookes, P. J., and Landon, J., concurred.

Judgment modified as per opinion and affirmed as modified ; to be settled by Peckham, J.

---

THE PEOPLE OF THE STATE OF NEW YORK ex rel. EUGENE VAN RENSSELAER and Others, Appellants, v. WILLIAM J. WEAVER and Others, the Assessors of the City of Albany, Respondents.

*Assessment — what lands in the city of Albany are entitled to be assessed as "farming lands" under section 2 of chapter 139 of 1870, as amended by chapter 402 of 1877.*

Certiorari to review the action of the board of assessors of the city of Albany in assessing certain lands owned by the relators, as city lots, instead of assessing them at a valuation no greater than the valuation of similar farming lands in the town adjoining, as required by section 2 of chapter 139 of 1870, as amended by chapter 402 of 1877. The lands in question were situated in that portion of the town of Watervliet which was annexed to the city of Albany by the aforesaid act of 1870. The act of 1870, as amended, provided that "the farming lands lying within said district, and used exclusively as such," should not "be assessed at a valuation greater than the assessed valuation of similar farming lands in the town adjoining."

Prior to and at the time of the annexation the lands in question, containing about nineteen acres, had been, and then were, treated, used and rented as a farm,

134 PEOPLE ex rel. VAN RENSSELAER *v.* WEAVER.

THIRD DEPARTMENT, JUNE TERM, 1886.

and for no other purpose. They were rented to one tenant Krug, who used the lands as a farm, living in the brick-house which then stood, and still stands, upon a portion of the land. Krug continued in possession of the entire premises until 1881, since which time he has occupied between eight and nine acres thereof, using the land and raising crops in the same manner and of the same character as is usual among small farmers, his lease requiring the premises to be used for farming purposes, and for no other use or purpose whatever.

Since 1881 one Blackburn has used some four acres, and one Ryan about two acres, under leases containing the same restrictions, for the same purposes. The relators have never sold, or attempted to sell, any portion of the property as city lots, neither have they made, or caused to be made, any map showing its separation by streets or its division into lots.

After the annexation of this district a portion of the land was taken by the city, by involuntary proceedings, for streets, some of which were opened and used, but not paved, nor was any drain laid in any portion thereof which adjoined the remaining land of the relators. Other lands in the vicinity owned by other persons have been sold in lots and built upon, and the neighborhood is well settled and receives the general benefits of the police, fire and school departments of the city.

*Held,* that the lands were entitled to the privileges conferred by the said act upon farming lands used exclusively as such, and should not be assessed at a valuation greater than the assessed valuation of similar farming lands in the town adjoining.

APPEAL from an order, made at the Albany Special Term, affirming the action of the respondents in assessing the lands of the relators and denying the relief demanded by them.

The matter was brought before the court upon a *certiorari,* issued under chapter 269 of 1880, to review the action of the board of assessors. The lands in question were brought within the boundaries of the city of Albany, in 1870, by chapter 139 of the Laws of that year.

The lands upon which are imposed the assessments which are sought to be reviewed in this proceeding are owned by the relators and form a part of a farm known as the Harper farm, which was formerly bounded on the north by lands belonging to the New York Central and Hudson River railroad; on the south by Clinton avenue; on the west by a farm formerly belonging to the relator and others, and formerly known as the Hunter farm, and on the east by a tract of land formerly known as the Bleecker tract. All of the farm was situated in that portion of the town of Watervliet which was annexed to the city of Albany by chapter 139 of 1870.

PEOPLE ex rel. VAN RENSSELAER v. WEAVER.   135

THIRD DEPARTMENT, JUNE TERM, 1886.

In 1871 the city acquired title to the land lying in those portions of Second and Third streets and Livingston avenue, which run through the relator's lands, and in 1872 it acquired title to that portion of New York Central avenue which runs through the said lands. It acquired title to the said lands in legal proceedings instituted under the provisions of its charter, and not by grant or voluntary conveyance from the relators.

Those portions of Second and Third streets, and of New York Central avenue which run through the lands of the relators, have, since the city acquired title to them, been opened. to and used by the public as streets, but no portion of any of the said streets adjoining relators' lands has ever been graded, paved or flagged, nor has any public drain or sewer been constructed in those portions thereof which adjoin the relators' lands. Up to the line of relators' lands Second and Third streets and Livingston avenue are drained, and flags, curbs and sidewalks are laid, and houses built on each side of the streets. It is a well settled and thickly populated neighborhood. Livingston avenue, in so far as it runs through the lands of the relators, has never been opened for public use, and the land lying in the same has been used and cultivated by the tenant to whom the adjoining portions of the old Harper farm have been leased in connection therewith.

The assessors of the city of Albany, in assessing these lands upon the assessment-rolls for the year 1885 at the values and assessments above stated, assessed them as they would other city lots, and did not assess them as "farming lands".lying within the district annexed to the city by the act of 1870, "and used exclusively as such," as those terms are used in section 2 of chapter 139 of 1870, as amended by section 1 of chapter 402 of 1877. After the passage of chapter 139, Laws 1870, the annexed district received generally the benefits of the police, fire department, school and other urban arrangements and measures.

*Leonard G. Hun* and *W. B. Van Rensselaer*, for the relators.

*D. Cady Herrick*, for the respondents.

PARKER, J.:

This is an appeal from an order of the Special Term, confirming and approving an assessment of certain real estate belonging to the

relators and situate in the city of Albany, as made by the assessors of said city in the year 1885.

Prior to April 6, 1870, the lands in question were situate in that portion of the town of Watervliet, Albany county, which was, by chapter 139 of the Laws of 1870, annexed to the city of Albany.

By said act, as amended by chapter 402 of the Laws of 1877, it is provided that " the districts of country now comprising parts of the towns of Bethlehem and Watervliet, and mentioned in section 1 of this act, and the inhabitants residing therein, shall not be liable for any taxes, assessments and charges heretofore assessed, levied or imposed upon the city of Albany, nor shall such districts or its inhabitants be liable to assessment or taxation for the reimbursement of any debt heretofore contracted by the city of Albany ; nor shall the farming lands lying within said.district, and used exclusively as such, be assessed at a valuation greater than the assessed valuation of similar farming lands in the town adjoining."

The relators contend that their lands are farming lands, and used exclusively as such and must, therefore, be assessed not upon the basis of their actual value, but at a valuation no greater than the valuation of similar farming lands in the town adjoining. The defendants admit that the property has been assessed by them as city lots, and claim that it must be so regarded and treated by them and the courts. It is not claimed that the assessment is greater than the actual value of the property, but that the property has not received the benefit and protection which the legislature intended it should receive as one of the conditions of annexation.

The power of the legislature to impose upon the city of Albany, when it applied for this increase of territory, as a condition precedent, that it should not impose upon the property annexed, while its character remained unchanged, any greater burden of taxation than it was compelled to bear in the town, cannot be questioned. Upon such terms as the legislature imposed the city sought to, and did, obtain the territory, including the lands in controversy. With those conditions, however unjust and inequitable they may now appear, it must comply.

The language of the statute is plain and the intent clear. The farming lands embraced in the annexed district, while they remained such and were so used exclusively, should bear no greater burden

of taxation than as if they were not included in the city limits. No increased assessment was to be permitted, based upon a prospective value of the lands as lots for building purposes.

To secure an absolute compliance with this provision, the act further fixed the standard of comparison to be made by the assessors. They were not authorized to appraise it, to determine its actual value or to use their individual judgment in determining its value as farming lands, but they were commanded to fix a valuation not " greater than the assessed valuation of similar farming lands in the town adjoining," i. e., the town of Watervliet. The question then is, were the lands in controversy, at the time of the making of the assessment under review, farming lands and used exclusively as such ? If they were the relators are entitled to the relief asked for, if not, the assessment must stand.

It is admitted that prior to and including April 6, 1870, the whole of the land in question had been treated, used and rented as a farm, and for no other purpose. It was rented to one tenant who used the land as a farm, living in the brick-house which then stood and still stands upon the portion of the land which lies north of Livingston avenue.

The number of acres was about nineteen. Beyond dispute or cavil, therefore, the relators, in the year 1870, were entitled to have the premises in question assessed as farming lands, and at a valuation not greater " than the assessed valuation of farming lands in the town adjoining." The relators were then, as now, the owners of such lands. They had control over them. Had the right to determine whether or not any use should be made of them. If any, what use. If it were determined that the lands should be and remain farming lands, and be used exclusively as such, there did not exist, outside of the relators, the right or the power to gainsay it.

In 1870, one Leopold Krug was in the possession of the entire premises, and so continued until 1881, since which time he has occupied between eight and nine acres. Since 1883 his lease has required the demised premises " to be used for farming purposes and for no other use or purpose whatever," and from 1870 to the present he has worked the land and raised and gathered crops, in the same manner and of the same character as is usual among small farmers.

In 1881, between three and four acres were leased to Blackburn, and he is now in possession under a lease containing the same restric-

138 PEOPLE ex rel. VAN RENSSELAER *v.* WEAVER.

THIRD DEPARTMENT, JUNE TERM, 1886.

tion as the lease to Krug, and he has used the land to raise potatoes and oats on and for pasture, and for no other purpose whatever. Ryan went into possession of about two acres of the land in 1881, and now holds under a lease containing the same restriction as the Krug lease. He has used the land for pasture, and for sowing and planting corn, and for no other purpose.

It appears, therefore, that so far as the use of the land is concerned, there has been no act on the part of the relators or their lessees to change its character since 1870, when it was confessedly a farm and used for farming purposes exclusively, and the terms of the lease show a determination on the part of the relators to avoid every possibility of a change in its character and use. This precaution may have, and doubtless was taken, for the purpose of avoiding an increase in the tax levy against their property, but it was a privilege which the law afforded, and their perfect right to take advantage of it cannot be questioned.

The relators have never sold or attempted to sell any portion of the property as city lots, neither have they made or caused to be made any maps showing its separation by streets or division into lots. True, the city has acquired title to the land lying in those portions of Second and Third streets and Livingston and New York Central avenues, which run through the relators' lands, but the title was acquired by means of legal proceedings, instituted under the provisions of its charter, and not by grant or voluntary conveyance from the relators. It is clear, therefore, that by no act of the relators has the character of the lands been changed and the city did not change it by acquiring title for highway purposes to some portion of it, by which a separation of parcels resulted. (*Saunders* v. *Springsteen*, 4 Wend., 429 ; *Commonwealth* v. *Carmalt*, 2 Binney, 235.)

In *Gillette* v. *City of Hartford* (31 Conn., 351) the statute of annexation, construed by the court, provided that no city tax exceeding a certain rate should be assessed so long as " said land is or shall be *used exclusively for farming purposes* or is vacant or unoccupied land." In the statement of facts it appears that streets had been laid and made out through the land, and some building lots sold, and that all of the pieces of land assessed border on streets made or projected. That the land was used by the plaintiff Gillette, a farmer, to raise farm crops until sold as lots, and the

court held that the lands were to be regarded as "used exclusively for farming purposes," or as "vacant and unoccupied lands" within the meaning of the statute.

The assessors erred in assessing the lands in question as city lots. The order of the Special Term must, therefore, be reversed, with costs and printing disbursements, and case remitted to Special Term for reassessment and correction as provided for by chapter 269 of Laws of 1880, with liberty to take or direct further proof as may be deemed necessary. Order of reversal to be settled by PARKER, J.

BOOKES, P. J., and LANDON, J., concurred.

Judgment reversed, and case remitted to Special Term for reassessment and correction as provided for by chapter 269 of the Laws of 1880, with liberty to take or direct further proof as may be necessary. Order to be settled by PARKER, J.