## LORILLARD *vs.* THE TOWN OF MONROE.

An action will not lie against a town, for an error made by the assessors of taxes, in assessing the whole of a tract of unoccupied lands, a portion of which lies in an adjoining county.

There is nothing in the character of town officers, or in the duties and responsibilities which they impose; or in the relation which the persons selected to execute them bear to their towns respectively; or in the terms of the statutes relating to this subject, which will warrant the conclusion that the legislature intended to make such officers the agents of the towns, so as to render the towns liable to actions in their corporate capacity, for the mistakes, or non-feasance, or misfeasance, or malfeasance of such officers.

THIS was an action brought by the plaintiff against the defendant, to recover the amount of taxes assessed by the assessors of the town of Monroe, in Orange county, upon wild, unculti-vated, and unoccupied forest land, belonging to the plaintiff, in Rockland county, from the year 1844 to the year 1849, both in-clusive, and collected by the collectors of the same town during those years, amounting in the whole to the sum of $484,89, for which sum he demanded judgment. The defendant's answer de-nied most of the material allegations in the plaintiff's complaint; and, admitting that the plaintiff was the owner of a large tract of land, situate partly in the town of Monroe, in the county of Orange, and partly in the county of Rockland, alledged that in

the year 1844, and from that time continually to the then present time, the said tract of land, and every part thereof, was and had been occupied, and that the occupant during that period resided in the said town of Monroe. It was also in the answer insisted that if the assessors of taxes of the town of Monroe, wrongfully and unlawfully assessed taxes on the lands of the plaintiff, his remedy for such wrongful and unlawful assessment, was by action against the assessors, and not against the defendant. The plaintiff replied, denying the statements of the defendant; and denying that his remedy was by action against the assessors of taxes, but insisting that the defendant was liable for the unlawful acts of the agents of the town.

The cause was tried at the Orange circuit, in September, 1850. On the trial the plaintiff proved, by the surveyor who surveyed the tract, that in the year 1844 it contained 9,975 acres, of which 7,887 acres were in the town of Monroe, in the county of Orange, and 2,088 acres in the county of Rockland, and of this part lying in the county of Rockland, 1,579½ acres were not connected with the rest of the tract, but were distant 77 chains from it; 637 acres of this were sold in 1843, by the plaintiff, the remainder in 1847. On the first of November, 1847, the plaintiff sold 1,979 acres of the part of the tract in the town of Monroe. The tract was wild, uncultivated mountain land, except about seventy-five acres, called the Truxedo farm. The plaintiff produced on the trial, as witnesses, the several collectors of taxes of the town of Monroe from the year 1844 to the year 1848, both inclusive, and proved by them respectively that they collected the taxes for those years, from the plaintiff himself in one instance, and from his agents in the others; and he also proved by his agent that he, the agent, had paid to the collector of taxes for the town of Monroe, in the year 1849, the tax assessed upon the plaintiff's said tract, for that year. And the agent also proved that he had met the assessors of the town of Monroe at different times, and informed them that part of the tract of the plaintiff was situated in the county of Rockland, and that they ought not to assess that part, in the town of Monroe. That he had refused to pay the taxes

Lorillard *v.* Town of Monroe.

to the collectors at first, but finally paid them; the collectors stated to him that they would return the land to the comptroller, unless he paid the taxes; in one instance, a levy was made upon some wood belonging to his son, which was lying upon the land. After the testimony was closed on the part of the plaintiff, the defendant's counsel asked for a nonsuit on the grounds: 1st. That the lands of the plaintiff were occupied, and the occupant resided in the town of Monroe, in Orange county. 2d. That the plaintiff had voluntarily paid the taxes, with a full knowledge of the facts on which the claim was founded. 3d. That the plaintiff had mistaken his remedy (if any;) that the money collected (or the greater portion thereof,) had been paid over to the treasurer of the county of Orange. 4th. That there was not sufficient evidence to sustain the action. The court refused to grant the nonsuit, and the defendant's counsel excepted.

The testimony of the witnesses examined on the part of the defendant, did not materially vary the case made out by the plaintiff. The offer to prove that previous to assessing the plaintiff's land, one of the assessors of the town of Monroe, in 1844, called on the agent of the plaintiff, and was by him informed that the tract contained 11,000 acres; and that, relying upon that information, he assessed it accordingly; and also the offer to prove that that portion of the plaintiff's land, lying in Rockland county, was of much less value per acre than that lying in Orange county, were rejected by the court; and the defendant's counsel excepted.

The court charged the jury, that the plaintiff's agent could not be considered the occupant of the plaintiff's tract of land in question; but that the same was unoccupied: and directed the jury to find a verdict for the plaintiff; the parties stipulating to agree on the amount of the verdict, after the decision of the court, on the case reserved. The defendant's counsel excepted to the charge of the judge, and insisted that it should be submitted to the jury to determine whether the land was unoccupied or not. The jury, under the direction of the court, found a verdict for the plaintiff. And the court ordered the cause to be reserved for argument, upon a case to be made; which, by a

stipulation between the parties, might be turned into a bill of exceptions, by either of them. The judge decided the case in favor of the plaintiff; and a judgment was thereupon entered in his favor for $436,95, damages and costs. From that judgment the defendant appealed to the general term.

*S. J. Wilkin*, for the respondent.

*Wm. Fullerton*, for the appellant.

*By the Court*, BARCULO, J. The view that I take of this case will render it unnecessary to examine, in detail, the several points made by the respective counsel. I shall therefore only discuss the question *whether an action will lie against a town for an error made by the assessors in assessing the whole of a tract of unoccupied lands, a portion of which lies in an adjoining county.*

It was conceded, on the argument, that no direct authority or precedent for maintaining such an action could be found in the reports of this state. The question must be determined, therefore, upon principle and analogy. Our statutes regulate *the mode of proceeding* in actions brought against counties or towns, or by or against the officers; but they do not determine what actions may be brought against counties or towns, except under the general designation of such as "are allowed by law." I am unable to discover any principle upon which this action can rest; unless it can be established that the assessors stand in the relation of *agents of the town*. Do they sustain this relation? Can the various officers whose offices are created by our general statutes, such as commissioners of highways, superintendent of schools, overseers of the poor, &c. (for they all stand upon the same footing in this respect,) be deemed the agents of the towns in which they are elected, so as to render the town responsible to actions, in its corporate capacity, for their mistakes, or nonfeasance, or misfeasance, or malfeasance?

I am unable to discover any thing either in the character of the offices, or the duties and responsibilities which they impose;

Lorillard *v*. Town of Monroe.

or in the relation which these officers bear to their towns respectively; or in the terms of the statutes relating to this subject, which will warrant the conclusion that the legislature intended to make such officers the agents of the towns in the sense supposed.

The office of assessor does not originate with the town; it is created by the act of the legislature. The duties performed by him are not imposed upon the town; it is no part of the power or duty of a town to assess and collect taxes. An assessor is, in this respect, an officer of the state, with duties circumscribed by a territorial limit. He receives his instructions from the statute; he is not controlled or directed in the slightest degree by his town; and when the tax list is completed, it is reviewed by the board of supervisors, who issue their warrant for the collection. Nor do the moneys, when collected, go into the treasury of the town, but pass directly into the treasury of the county, except such as are applied to the payment of the various officers for their public services. It is true that the electors of a town select their assessors, and of course have the power of changing them annually. But no one will pretend that this constitutes the legal relation of principal and agent. The electors act under the law, and when they have elected their assessors, their power over them ceases. They can neither bind them by instructions, nor revoke the powers which they possess, during their term of office. It is quite clear that there is nothing like an agency here, which can render the principal responsible. Indeed, I think it may be safely said that in regard to town officers, generally, whose duties are prescribed by the statute, their towns are not liable to an action for a *violation of their duty*. If any remedy exists, as I think there does in most cases of mere ministerial officers, it is against the delinquent himself. As to judicial duties, it is well settled that no civil action will lie under any circumstances. ( *Wilson* v. *Mayor, &c. of New-York*, 1 *Denio*, 595. *Weaver* v. *Devendorf*, 3 *Id*. 117.)

The cases in this state which are supposed to countenance

this action, are all reconcilable with the views above expressed. It is no uncommon occurrence to recover against a *municipal corporation* for a neglect or violation of the duties of its officers. Thus, the corporation of the city of New-York have frequently been held liable for injuries occasioned by the unsafe condition of the streets and sewers. (*Delmonico* v. *City of New-York*, 1 *Sandf. Sup. Court Rep.* 223. *Mayor, &c. of New-York* v. *Furze*, 3 *Hill*, 612.) But it will be found on examination that all these cases rest upon the position, that the officers are the agents of the corporation, engaged in performing duties imposed upon the principal. Thus, it is the duty of the corporation of the city of New-York, to keep the streets and sewers in repair, and if this duty is neglected by the officers selected to take charge of them, the corporation must be held responsible. And in the case of *Martin* v. *Mayor, &c. of Brooklyn*, (1 *Hill*, 545,) it was expressly held, that a municipal corporation was not liable for the misfeasance, or. nonfeasance of one of its officers, in respect to a duty specifically imposed by the statute *on the officer*. Judge Cowen makes use of the following language : " No case has been cited wherein it has been holden that municipal corporations are liable for omissions of a duty specifically imposed by statute upon one of their officers. In this respect, the latter are *quasi* civil officers of the government, though appointed by the corporation." " Here the trustees can not be removed at the pleasure of the corporation ; and in regard to streets, they are to obey the statute, like town commissioners. Several cases were cited on the argument wherein it was held that such officers are liable personally, but none that the corporation who elect them is liable as such. You may as well make a town liable for the nonfeasance of commissioners of highways in stopping or delaying proceedings to lay out a new road." (*See also Bailey* v. *Mayor, &c. of New-York*, 3 *Hill*, 531 ; *same case in court of errors*, 2 *Denio*, 433.)

The cases cited from the reports of the state of Massachusetts, although from the peculiarities of their system of government, they seem to favor an action of this description, do not fully

sustain the position of the plaintiff. In the case of *Preston* v. *The City of Boston*, (12 *Pick.* 7,) the plaintiff was a non-resident of the city of Boston, and not liable to be taxed there at all for personal property. He was therefore allowed to recover back the money collected of him, upon the ground that the city assessors had no jurisdiction over him, and the court distinguish the case from that of *Osborne* v. *The Inhabitants of Danvers*, (6 *Pick.* 98,) where the plaintiff, being liable to taxation, was erroneously taxed for personal property invested in business in the city of New-York, and was not permitted to recover; the court holding that it was a case of overvaluation, for which there was no remedy but by appeal.

Whether the plaintiff has any remedy against the assessors, is left in some doubt by the decisions of this court. In the case of *Saunders* v. *Springsteen*, (4 *Wend.* 429,) an action of this nature was brought against the assessors, before a justice of the peace, and a recovery had; on appeal a similar judgment was recovered in the common pleas, which was subsequently affirmed by this court. But it does not appear that the question was raised whether the action would lie against the assessors. The only question discussed, in the opinion of the court, was, whether the land was properly taxable in the town of Lewiston. On the other hand, the assessors in the present case, having jurisdiction of the subject matter by reason of a portion of the lands lying, and being clearly taxable, within their town; and being authorized to assess that part lying in the county of Rockland, in case the lands were to be considered as occupied by the plaintiff, or his agents, in the town of Monroe, in determining the question of occupancy, and their right to assess, would seem to perform a *judicial act*, within the reasoning in *Van Rensselaer* v. *Cottrell*, (7 *Barb. S. C. Rep.* 127) and *Van Rensselaer* v. *Witbeck*, (*Id.* 133.) If this be so, then clearly no action will lie against them. (1 *Denio*, 595. 3 *Id.* 117.) The only redress, therefore, which the plaintiff has, must be obtained by petition to the board of supervisors of the county.

We think that the justice was correct in charging the jury

HARVARD LAW SCHOOL LIBRARY.

Burdick *v.* Post.

that the lands. were unoccupied; but as the complaint does not state facts sufficient to constitute a cause of action, the judgment below must be *reversed*.

[Kings General Term, October 6, 1851. *Morse, Barculo* and *Brown*, Justices.]