CALVIN L. HATHAWAY, as Supervisor of the Town of Solon, v. THE TOWN OF HOMER.

(GENERAL TERM, THIRD DEPARTMENT, APRIL, 1871.)

Under the provisions of section 2 of chapter 29 of Laws of 1865, the town of Solon, in Cortland county, became entitled to certain bounty moneys from the State, for excess of years' service of men furnished by it under calls of the President of the United States, made prior to December 19th, 1864. These moneys were erroneously paid to a supervisor of the town of Homer, in that county, for its benefit, and so appropriated by him.

Held, that they might be recovered in an action brought by the supervisor of the former town, in its behalf, against the latter town.

Hathaway *v*. The Town of Homer.

The fact that the bounty money originally paid for the men, and which the State refunded, was the money of the county paid to its volunteers, and that they were credited to the county by the United States authorities and not to the town, and afterward the money was paid to the county by the plaintiff's town, and the men applied on its quota, does not affect the right to recover.

Nor does it affect such right, that such money was paid upon a scheme of credits made by the provost marshal, showing that plaintiff's town had no credits for men furnished.

The county is not a proper party to such action, its rights being in no way involved.

The certificate of the provost marshal, upon which the money was paid by the paymaster-general, is not conclusive as to the rights of the plaintiff.

Exceptions ordered to be first heard at General Term.

The action was brought to recover the sum of $540, and the interest thereon from the 24th day of November, 1865, and was tried at the Cortland County Circuit, before Mr. Justice Boardman and a jury in April, 1870.

It appeared upon the trial that for the purpose of filling its quota, under the call of the President of the United States, of July, 1864, the town of Solon applied to the war committee of the board of supervisors of Cortland county, to have fourteen men who had been enlisted and mustered into the United States service to the credit of Cortland county, transferred to and applied on the quota of said town.

Accordingly, on the 16th of September, 1864, a contract in writing was entered into, whereby these men were applied on the quota of Solon, and that town paid to the county, through its war committee, the sum of $9,225, being the amount the men had cost the county.

This transfer was made pursuant to an order made by the provost marshal-general of the western division of the State of New York,

This order was directed to the provost marshal of the 23d district of New York (which embraces Cortland county), and thereupon these men, to the number of twelve, were transferred to the credit of the town of Solon by that officer.

This transfer was approved of by the bounty committee of

the county.   These men had been regularly enlisted and mustered into the United States service.   Twelve of them enlisted for the term of three years, and two for the term of one year each.   And when the quotas were made out, under the December call of 1864, Solon had credit for all of these men for the respective terms for which they were enlisted.

Nor were these men applied upon the quota of any other town, for all the other towns were full.

By chapter 29 of the Session Laws of 1865, passed February 10, it is provided that where any town shall have furnished *an excess of years of service*, under the call of July 18, 1864, by furnishing men for one or *more years*, who being, or having been, credited, *before* or *since* the call of December 19, 1864, to such town, shall have *operated* to relieve, in whole or in part, such town from furnishing men, under the call of December 19, 1864, the bounties raised and paid (not exceeding the rates and sums named in said act) shall be refunded from the moneys to be obtained, or by the bonds to be issued, under the provisions of said act.

The act further provides for the payment of volunteers as follows:  To one who enlists for three years, $600; for two years, $400 ; for one year, $300.

The board of supervisors, in the spring of 1865, appointed a committee of three of their number, composed of George W. Phillips (then supervisor of the town of Homer), Matthias Van Hoesen and Delos McGraw, to make the necessary application under said act to procure the reimbursement to the county, and the several towns in the county, for moneys paid to volunteers.

This committee went to the office of the paymaster-general in Albany, and received from him $30,000 for *excess of years' service* of men, together with other moneys, and made their report to the board of supervisors on the 17th day of November, 1865.

By that report, which was drawn up by the supervisor of the defendant, and signed by all of the committee, a portion of this $30,000 was for excess of years of ten three-years' men,

and one one-year's man, who were furnished by Solon, and belonged to that town, but were distributed to eleven other towns, whose quotas were already full, and Homer is one of the towns that shared in this distribution.

On the 4th day of November, 1869, the plaintiff, as supervisor of the town of Solon, presented a claim in writing, duly verified, to the board of auditors of Homer, at their annual meeting, and requested its allowance to the amount of $540, and interest from the 24th of November, 1865, that being the day when final action was taken by the board of supervisors, refusing to pay over the money to Solon.

The board refused to audit the claim.

Some other facts are referred to in the opinion. A verdict was rendered in favor of the plaintiff, under the direction of the court, for $689.10, debt and interest.

Upon the trial, questions were raised as to the plaintiff's right to recover and the admissibility of testimony, which, so far as material, are discussed in the opinion.

A bill of exceptions was made and served, which was ordered to be heard in the first instance at General Term.

*Horatio Ballard,* for plaintiff.

*M. M. Waters,* for defendant.

Present—MILLER, P. J., POTTER and PARKER, JJ.

By the Court—MILLER, P. J. As I understand the facts of this case, the proof is uncontradicted that the town of Solon filled her quota under the call of the President, of July, 1864, by men transferred to her credit by the county, for which she paid the county the sum of $9,225. This transfer was made in pursuance of the order of the provost marshal of the district, who credited the men to the town of Solon. Subsequently, and in August, 1865, the volunteer bounty committee obtained the reimbursement money from the paymaster-general, and included in this money was the amount

paid by Solon. 'The money thus received was for excess of years' service of men, with other moneys.

It appears, from the report of this committee to the board of supervisors, that the town of Solon had a claim for excess of years' service, owing to errors in crediting the sum assigned to the town by the county, and that, upon the excess, one one-year's man and ten three-years' men were distributed to other towns and belonged to the town of Solon, and that the town of Homer was one of the towns which received one of the three-years' men. Of the sum thus received, the amount of $600 was paid over to the supervisor of the defendant and expended for the benefit of said town. This money belonged to the town of Solon, and should have been paid over to the supervisor of that town, and, as it has been wrongly paid to Homer, upon every principle of equity should be refunded to the party to whom it originally belonged.

Unless there is some legal obstacle in the way, therefore, the plaintiff is entitled to recover the amount in this action. I think that none such exists, and that none of the objections urged to the validity of the plaintiff's claim are well founded.

It does not relieve the defendant from responsibility, because the money originally paid for the men, which the State refunded, was the money of the county, paid to their volunteers, and that they were credited to the county by the authorities of the United States, and not to Solon. Nor that the money received by the county was paid on a scheme of credits, made by the provost marshal, showing that Solon had no credits, if such was the fact. It is enough, to maintain this action, that this money, equitably and fairly, belonged to Solon, and that Solon was the party entitled to it, upon every just principle. Concede that the county paid the money, and was credited with it, and that Solon had no credits, yet, if, after all this, it appears that there was an error, and that, rightfully and lawfully, the money belonged to Solon, there is no reason why Solon is not entitled to it, or that it should suffer by reason of any error in the transaction. The true question is, to whom the money actually belonged, and

nothing should interfere with its payment to the real owner, but some inflexible and rigid rule of law.

Nor am I able to discover any good reason why the county is entitled to be heard upon the question arising in this case, or that the rights of the county are in any way involved as to whether the money in question equitably belongs to the plaintiff in this action. I do not see how the county, in any event, can suffer by a recovery in the action, or has any interest in its defense.

Although the provost marshal gave a certificate, upon which, it is claimed, the money was paid by the paymaster-general, I do not think it necessarily follows that such certificate must be considered as conclusive as to the rights of the plaintiff. If there were errors in making the certificate, there is no legal reason why they should not be corrected. That there was an error was proved by the clerk of the enrolling board, and established after a full investigation by a committee of the board of supervisors.

An official order directed the transfer of the men in question. It was approved by the county war committee, and sanctioned by the district marshal, and by the payment of the money. If the business was conducted in a loose and improper manner, so that the proper entries were not made, there is no reason why the town should be made accountable for the error. Whether any error existed, was a question of fact; and if there was such error, there is no reason why it should be beyond any correction.

There is no law which requires records of matters of this character to be kept, or which makes entries made conclusive evidence of the facts contained in them. These entries, independently of orders actually made, were matters of convenience and practice, fixed and arranged by the officers in charge and their employes, and not regulated by any statute. They were, I think, open to investigation; and, to ascertain whether they were erroneous, it was proper to introduce evidence to establish the error in any action in which they might be the subject of controversy.

If this money actually belonged to the town of Solon, and was improperly paid to the defendant's benefit, then no omission of public officers to make the proper entry of the transfer of the men in question, and no erroneous entry, affecting the claim, should prevent a recovery.

Other objections are urged, which affect the right of the plaintiff to maintain this action, which require examination.

It is said that no indebtedness is proved to Calvin L. Hathaway, as supervisor. This depends upon the question whether Calvin L. Hathaway, as supervisor, can maintain an action for a liability to the town, and in its behalf. This can be done under the Revised Statutes, "to enforce any liability to the body" which the supervisor represents, which, in this case, was the town. (1 R. S., 357, § 1; 2 id., 473, §§ 92, 93.) Clearly, there is a liability to the town for the money in question, which, under the statutes cited, can only be enforced by an action in the name of the supervisor. The provisions of the Revised Statutes which authorize legal proceedings in favor of or against towns, do not conflict with these views. 1 Revised Statutes (356, 357, § 2) provides that, in all such suits, "the town shall sue or be sued by its name, except where *town officers* shall be authorized by law to sue in their name of office for the benefit of the town." As we have already seen, the supervisor is expressly authorized to sue in his name of office. (See, also, *Supervisor of Galway* v. *Stimson*, 4 Hill, 136; *Town of Duanesburgh* v. *Jenkins*, 46 Barb., 294, 310; *Commissioners of Highways of Cortlandville* v. *Peck*, 5 Hill, 215; *Overseers of Hebron* v. *Ely*, Hill & Denio supp. 379.) It is enough that the money belonged to the plaintiff, and that the defendant was in possession of it, and did not pay it over, I think, to entitle the plaintiff to maintain the action; and it was not asserted that there should be a contract with the supervisor.

It is said that an action on contract cannot be maintained against a town. The action is not brought to recover damages for services rendered upon a contract, with a knowledge that the remedy to procure payment is through the action of the

supervisors, as was the case in several of the authorities cited to sustain this position. (2 Sandf., 460; 1 Kern., 563; 6 Seld., 260; 49 Barb., 506.) These cases, therefore, have no application. The remedy of the plaintiff was clearly by an action at law. The statute authorizes an action for a liability incurred of this character, and actions may be brought against the town by its name. (2 R. S., 473, § 95.) And when a judgment is obtained, it must be laid before the board of supervisors to be audited and collected. (2 R. S., 474, § 102; id., 475, § 103.) When a party has an adequate remedy at law, a mandamus will not lie. It is very clear that this is not a case for invoking such a remedy. (See 49 Barb., 264. *The People* v. *Croton Aqueduct Board*, and authorities there cited.) If, then, this action cannot be maintained, the plaintiff would be entirely remediless, and the money unlawfully withheld by the defendant could not be reached.

It is said that the town is not liable for money received by its supervisors, whenever such money belongs to another party or town. This is a broad proposition, and, I think, unsound. The money was received here under a supposition that it was rightly paid for the benefit of the town, and was appropriated for that purpose. It would be an extraordinary doctrine to hold that money appropriated for the benefit of a town could in no way be reached except by an action against the supervisor, individually, through whose hands it had formally passed; why should the supervisor be liable, when he has received no benefit and merely acted officially? The cases relied upon to sustain this position do not go to the extent claimed. (1 Kern., 574, 392; 12 Barb., 161.)

The objections made to the admission of evidence were properly overruled. If any of the evidence introduced is liable to criticism or was exceptional, it worked no injury to the defendant, and, therefore, there is no ground for granting a new trial for any such reason. A new trial is denied and judgment ordered for the plaintiff on the verdict, with costs.

New trial denied.