(47 App. Div. 250.)

KENNEDY v. QUEENS COUNTY.

(Supreme Court, Appellate Division, Second Department. January 9, 1900.)

COUNTIES—CONTRACTS—ACTIONS.

Laws 1892, c. 686, § 2, declares a county to be a municipal corporation; and section 3 provides that an action for or against a county on a contract lawfully made with it, or with any of its officers or agents authorized to contract in its behalf, shall be brought in the name of the county. *Held*, that where a county board of supervisors contracted for the furnishing of electric power at a fixed sum, and, on presentation of plaintiff's claim therefor, rejected the same and repudiated the contract, plaintiff was not required to bring mandamus against the board to compel the auditing of his claim, but was entitled to sue the county as such for breach of the contract.

Appeal from trial term.

Action by James Kennedy against Queens county for electricity furnished under a contract with defendant's board of supervisors. From a judgment in favor of plaintiff, and from an order denying defendant's motion for a new trial, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, and WOODWARD, JJ.

Isaac P. Coale, for appellant.
George W. Stephens, for respondent.

GOODRICH, P. J. The main question arising on this appeal is whether an action can be maintained against a county on a contract into which it has entered, where by the terms of the contract the amount named in it is made a county charge. In January, 1895, the Long Island City Electric Illuminating Company, in pursuance of sections 62 and 68 of the county law, made a contract with the county of Queens and the county of Kings by which the company agreed to furnish electric power to operate a motor to be placed by such counties on a bridge over Newtown creek, for a term of five years, and at a fixed rate. Newtown creek is the dividing line between the counties, and the contract provided that each county should pay one-half the amount to be paid. The defense raises the question whether a suit will lie against the county of

Queens, eo nomine. The court at trial term directed a verdict for the plaintiff, and from the judgment entered thereon the present appeal is taken.

The complaint contains a copy of the contract, by which the plaintiff agreed to provide at all times during the life of the contract sufficient electric power, of not less than 500 volts, to operate an electric motor of 25 horse power which was owned by the defendant; the plaintiff to provide at all times electric energy equal to 25 horse power. The counties agreed to pay $3\frac{1}{2}$ cents per electric horse power per hour, calculated on the basis of 15 hours in each 24. The board of supervisors bound "themselves to audit each month the accounts rendered by the party of the second part [the plaintiff], and to issue a warrant for the amount determined by said audit, directing the county treasurer" to pay the same within 10 days. The complaint alleged that bills for the amount due were duly presented to the board of supervisors of Queens county, and that the board passed a resolution refusing to recognize said contract and rejecting the bills, and that no part of the bill has been paid. The answer admitted the first allegation of the complaint, —that the defendant is a municipal corporation,—and denied the making of the contract, the furnishing of the power, and the presentation of the bills for audit to the board of supervisors.

The defendant contends that the remedy under such circumstances is by mandamus or certiorari against the supervisors, and that an action cannot be maintained against the county. It cites the case of Brady v. Supervisors, 10 N. Y. 260, where the court affirmed the judgment of the general term of the New York superior court upon the opinion of Oakley, C. J., in 4 N. Y. Super. Ct. 460. The action was brought to recover compensation for professional services rendered to the defendants in the years 1845, 1846, and 1847. The court held that such services were a county charge, and that no action for the recovery of a county charge can be maintained against a county or the board of supervisors; that suits can be brought against a county only for causes of action which cannot be settled or adjusted by the board in the exercise of its ordinary powers, such as torts, malfeasances of county officers, and the like; and, finally, that the supervisors of a county, as such, or as a board, are not a body corporate, and possess no powers of a corporation, but that the corporation is the county. The court said (page 474):

"We find no case in the books where the idea is presented of bringing an action against a county or against a board of supervisors for such a claim as the plaintiff's, or where it appears to have been thought of before."

It is important to notice that the term of the plaintiff's service in that case was from May 1, 1845, to May 1, 1847, inasmuch as the appellant in the case at bar contends that the constitution of 1846 changed the condition of the law under which the Brady Case was decided. We must assume, however, that the action was not commenced till after May 1, 1847. At this time the constitution of 1846 had gone into operation, as the final section provided that

it should go into force on January 1, 1847. Now, section 3 of article 8 of the constitution of 1846 contained a new provision:

"And all corporations shall have the right to sue and shall be subject to be sued in all courts in like cases as natural persons."

The provision remains in the constitution of 1894. There is therefore no difference between the constitutional provision existing at the time the Brady Case was decided and the present time. We are therefore left to an examination of the statutory law to ascertain whether any change has been made. The county law was passed in 1892 (chapter 686). By section 2 of this law (1 Rev. St. [9th Ed.] p. 593) it is provided that:

"A county is a municipal corporation, comprising the inhabitants within its boundaries, and formed for the purpose of exercising the powers and discharging the duties of local government, and the administration of public affairs conferred upon it by law."

Section 3 reads:

"An action or special proceeding for or against a county, or for its benefit, and upon a contract lawfully made with it, or with any of its officers or agents authorized to contract in its behalf, or to enforce any liability created, or duty enjoined upon it, or upon any of its officers or agents for which it is liable, or to recover damages for any injury to any property or rights for which it is liable, shall be in the name of the county. All contracts or conveyances, by or in behalf of, or to a county, shall be deemed to be in the name of the county, whether so stated or not in the contract or conveyance."

Section 3 of the general corporation law (2 Rev. St. [9th Ed.] p. 974) and section 1 of the general municipal law (1 Rev. St. [9th Ed.] p. 580) both declare in their definitions that a county is a municipal corporation.

It may be questioned, with some basis of authority, whether, before the acts thus cited, a county was anything more than a quasi corporation. Since the passage of these acts, it seems hardly open to question that a county is a municipal corporation, suable and capable of suing in its own name like any and all corporations. If, prior to the enactment of the general corporation law, which took effect May 1, 1891, counties had been considered to be corporations, within the cited provisions of the constitution of 1846, it would necessarily follow that this constitutional provision would have effected an implied repeal of the provision of the Revised Statutes that "the county shall sue or be sued in the name of the board of supervisors thereof." 1 Rev. St. (1st Ed.) pt. 1, c. 12, tit. 3, § 2; 2 Rev. St. (8th Ed.) p. 1077. But the courts continued after the adoption of the constitution of 1846 to hold that actions by or against a county, when permissible, should still be in the name of the board of supervisors. It follows, therefore, as a necessary deduction, that the courts of this state did not consider a county to be a corporation, within the meaning of the above-quoted clause of the state constitution. This is in accordance with the general doctrine in England and this country, which is thus stated in 1 Dill. Mun. Corp. (4th Ed.):

"Sec. 22. * * * but the school district or county, properly speaking, is not, while the city is, a municipal corporation. * * * Sec. 25. * * * Considered with respect to the limited number of their corporate powers, the

bodies above named rank low down in the scale or grade of corporate existence, and hence have been frequently termed 'quasi corporations.' This designation distinguishes them on the one hand from private corporations aggregate, and on the other from municipal corporations proper, such as cities or towns acting under charters or incorporating statutes.  *  *  *"

The same doctrine has been thus stated:

"But in this country counties are not called 'corporations,' in the fullest sense of the term, and they are commonly called 'quasi corporations.' " 7 Am. & Eng. Enc. Law (2d Ed.) p. 901.

This doctrine is entirely consistent with statements appearing in opinions of the courts of this state between 1846 and 1891, referring to counties as municipal corporations; for substantially all such statements have been made with modifications to the effect that counties are municipal corporations in certain respects, or for certain limited purposes.   The fact that the statutory provisions requiring actions by and against counties to be in the name of the board of supervisors continued unmodified by legislation from January 1, 1830, to May 1, 1891, and the fact that the courts in applying these statutes made no reference to the constitutional clause in question, make it sufficiently clear that by both legislative and judicial construction counties were not deemed to be corporations, within the meaning of this constitutional clause, until the enactment of the general corporation law.

To determine whether the plaintiff has mistaken his remedy in bringing this action, instead of presenting his claim to the board of supervisors for audit, and proceeding by mandamus or certiorari to compel or review such audit, a careful review of the statutes upon the subject before and after the enactment of the county law is necessary.   The following provisions of the Revised Statutes stood unchanged from January 1, 1830, to May 18, 1892:

"Sec. 4. Accounts for county charges of every description, shall be presented to the board of supervisors of the county, to be audited by them." 1 Rev. St. (1st Ed.) pt. 1, c. 12, tit. 4; 2 Rev. St. (8th Ed.) p. 1079.

"Sec. 4. The board of supervisors of each county in this state, shall have power at their annual meetings, or at any other meeting:  *  *  *  2. To examine, settle, and allow all accounts chargeable against such county; and to direct the raising of such sums as may be necessary to defray the same.  *  *  *"  1 Rev. St. (1st Ed.) pt. 1, c. 12, tit. 2, art. 1; 2 Rev. St. (8th Ed.) p. 1020.

These sections of the Revised Statutes were repealed by the schedule in the county law, which provided only the following substitutes therefor:

"Sec. 12. The board of supervisors shall:  *  *  *  2. Annually audit all accounts and charges against the county, due or to become due, during the ensuing year, and direct the raising of sums necessary to defray them in full.  *  *  *"  1 Rev. St. (9th Ed.) p. 597.

"Sec. 24. No account shall be audited by a board of supervisors, or by a committee thereof,  *  *  *  unless it shall be made out in items and accompanied with an affidavit that the items of such accounts are correct.  *  *  *"  Id. p. 603.

It was the first above quoted section 4 of the Revised Statutes (8th Ed.) which made the presentation of "accounts for county charges" to the board of supervisors compulsory, and was held to prohibit the

maintenance of actions thereon. Thus, in the leading case on this subject (Brady v. Supervisors, supra), Oakley, C. J., said (page 473):

"It is said the statute is directory only, and, if the plaintiff's claim fall within the description of a county charge, it was optional with him to submit it, or not, to the board of supervisors. We cannot give such a construction to the statute. The fourth section is peremptory in its terms,—that all accounts for county charges shall be submitted to the board; and it is an essential part of the whole system, framed with the intention that no action at all should be brought against a county for such services."

There is no provision of the county law corresponding to this "peremptory" fourth section of the Revised Statutes. Indeed, the county law contains no express requirement that any accounts whatever shall be presented to the board of supervisors to be audited by it. It is even questionable whether the "audit" required by section 12 of the county law is not intended to be in the nature of an estimate for the purpose of fixing the amount of the annual budget, rather than an audit, in the strict technical sense, of claims presented for the purpose of judicially determining the amounts thereof as between the claimants and the county. It is difficult to see how the board of supervisors can at its annual meeting technically "audit all accounts and charges against the county, due or to become due during the ensuing year." The authority to audit claims actually presented, for accounts and charges already due, is given by sections 12 and 24 of the county law. But it is reasonably clear that the "peremptory" fourth section of the Revised Statutes, above referred to, requiring all accounts for county charges to be presented for audit, was deliberately and intentionally repealed without re-enactment in the county law, for the reasons stated by the commissioners of statutory revision in their report of the proposed county law to the legislature, as follows:

"Article 1 of the revision proceeds upon the theory adopted in the corporation law (section 2), that a county is a municipal corporation, and should act, contract, sue and be sued, in its name, like a natural person, and not in the name of its board of supervisors or other officers or agents. It is believed that a change in this regard will tend to uniformity in transactions with such corporations, and relieve the statutes of some useless formalities and technicalities, and that such a change is demanded by the letter and spirit of the constitution (article 8, § 3), which provides that 'all corporations shall have the right to sue and shall be subject to be sued in all courts, as natural persons.'"

While it is true that the sections of the county law above quoted, together with the other provisions thereof relating to the audit of accounts by the board of supervisors (sections 25, 50, subd. 5, and 51, subd. 1), are not free from confusion, and a consistent system has not clearly been worked out, nevertheless it is reasonably clear that the revisers and the legislature intended to abolish the absolute requirement that accounts for county charges of every description must be presented to the board of supervisors, to be audited by it, and to leave it optional with claimants on such accounts either to present them for audit to the board of supervisors, and obtain voluntary payment by the county of the amounts allowed on such audit, or, without such preliminary presentation for audit, to bring an action against the county, in the name of the county, "in like cases

as natural persons." By this construction of all the provisions of the county law relating to the subject before us, an orderly system for the judicial determination and enforcement of claims by and against counties is established. The claimant may present his account for audit and voluntary payment, and may still compel such audit by mandamus, or have the proceedings reviewed by certiorari, or, at his option, he may at once bring action and have the amount of his claim originally determined by the courts, and, if successful, have payment thereof enforced by judgment and the remedies thereon. This conclusion is not inconsistent with any of the reported cases above cited. As was said by Judge Finch, speaking for the court, in Thomas v. Supervisors, 115 N. Y. 47, 55, 21 N. E. 674, 8 L. R. A. 175, "The two provisions can stand together, as furnishing a double remedy for the same default." In addition to this, Freel v. Queens Co., 9 App. Div. 186, 41 N. Y. Supp. 68, modified and affirmed in 154 N. Y. 661, 49 N. E. 124, seems to be conclusive authority on the question. A judgment was rendered in that action in favor of the plaintiff upon a contract made by him with the supervisors for the improvement of highways. On appeal this court reversed the judgment. The case was appealed to the court of appeals, which modified the judgment of the trial term as to amount, and affirmed it as modified. While the question of the right to maintain an action against a county eo nomine was not raised by the counsel for the defendant, it is difficult to believe that the case is not impliedly authoritative on the right to sue a county as a corporation. The answer in that case, like the answer in the case at bar, admitted that the defendant was a municipal corporation. Record on appeal, Law Library.

We are also referred by the defendant's counsel to Albrecht v. Queens Co., 84 Hun, 399, 32 N. Y. Supp. 473. The old general term of this department, in an action to recover for personal injuries sustained by the falling of a bridge over Newtown creek, held on demurrer that by section 12, subd. 2, of the county act, the power still vested in the board of supervisors to audit annually all accounts against the county, and that, if the plaintiff had a claim against the county, he must submit it to the board of supervisors for audit. Certainly this cannot be construed as a decision that no action would lie against the county, as that question was not raised either at special or general term. We have examined the record on appeal in the law library, and find in the opinion of Mr Justice Willard Bartlett nothing in reference to the point here raised. Indeed, he stated that:

"The only question argued upon the demurrer is whether a county whose board of supervisors is charged by law with the duty of providing by law for the care, maintenance, and repair of a bridge is liable for negligence in allowing the bridge to become out of repair."

Mr. Justice Cullen, writing for the court at general term, did not discuss the present question. The demurrer was sustained in both branches of the court on the ground that a county was not liable for the malfeasance of the supervisors or other county officers. It is true that Mr. Justice Cullen stated as a further objection to the

maintenance of the action that there had been no audit of the plaintiff's claim, saying:

"From the earliest period in the history of the state to the present it has been necessary to present claims against the county to the board of supervisors for audit. With some unimportant exceptions, dependent on special statutes, or where the claim was liquidated by the existence of a county obligation for a specific sum, suits could not be maintained against the county for claims or county charges. The remedy was by mandamus to the board of supervisors. If the claim was fixed by law, so as to involve no discretion, a mandamus would lie to audit it at a specific amount. If the claim required the exercise of discretion or judgment, the audit was conclusive, unless reversed on review, and could not be attacked collaterally. [Citing cases.] By section 12, subd. 2, of the county act, the same power is still vested in the board of supervisors to annually audit all accounts against the county. If the plaintiff has a claim against the county, it must be submitted to the board of supervisors."

But it seems to us that this was in no sense even an expression of opinion that an action would in no case lie against a county. Indeed, we think a contrary thought appeared when Mr. Justice Cullen referred to an exception in the case of a claim "liquidated by the existence of a county obligation for a specific sum."

In Re Lanehart, 32 App. Div. 4, 52 N. Y. Supp. 671, this court drew the distinction between the remedy by mandamus and certiorari. The question was not, and could not be, raised as to the right of suit by or against the county by name.

Erhard v. Kings Co. (Sup.) as reported in 36 N. Y. Supp. 656, does not appear to be the decision of the court, but the report of Ex County Judge Troy, sitting as referee; and, while weight should be given to his personal opinion, it has no authority.

After a careful examination of the reports of the old general term of the supreme court, since the passage of the county law, and of the appellate division, we find no action brought against a county eo nomine to recover the amount due upon a contract, other than the cases already cited. The other cases brought by or against counties relate to negligence, nuisance, penalties, or something other than claims against the county sounding in contract. A similar examination of the Court of Appeals Reports shows only such actions based on contract as are referred to in this opinion.

But another question arises upon the clause in the contract between the parties which reads:

"And the board of supervisors of the respective parties of the first part, by their approval of this contract, bind themselves to audit each month the accounts rendered by the party of the second part, and to issue a warrant for the amount determined by said audit.   *   *   *"

The defendant contends in its brief that:

"Even if the statute did not require these bills to be presented to the board of supervisors, the contract itself is explicit to that effect, and is binding upon both parties."

The record contains the statement that:

"Evidence was thereupon adduced by which the following facts, among other things, were established:   *   *   *   The amount of power present at all times ready for use was twenty-five electric horse power. Bills for the amount due under the contract were rendered monthly to the board of supervisors, who

on the 12th day of August, 1896, passed a resolution rejecting all of them, and directing the clerk of the board to notify the company that the county did not recognize the contract, or consider the same of binding force upon it, and elected to terminate the same."

We must not lose sight of the fact that neither mandamus nor certiorari lies against a county. Such writs issue only to the board of supervisors or the members thereof. Assuming that a writ of mandamus directing the board to audit the bill could issue, we are met by the fact that the board has refused to take any action, on the ground that it "did not recognize the contract, or consider the same of binding force upon it." If the board had recognized the contract as binding, and proceeded to audit the bill at less than the amount claimed by the plaintiff, on the ground that the power had not been fully furnished, its decision would have been final. Such was the ruling laid down by the court of appeals in Oster-houdt v. Rigney, 98 N. Y. 222, 232, and People v. Supervisors of Delaware Co., 45 N. Y. 196. In the latter case it was held that:

"The court has the power to decide whether a rejected claim is a legal claim against the county; and, if it be a legal claim, it may instruct and guide the board of supervisors by mandamus in the execution of their duty,—not to prescribe for them at what amount the claim shall be allowed (unless, indeed, the amount is fixed by law), but to compel them to admit that it is a legal claim, and to exercise their discretion as to the amount."

But the refusal of the board to recognize the contract or to audit the bills was a breach of the contract, and obviated any necessity on the part of the plaintiff to proceed by mandamus, or to have the bills audited, as a prerequisite to an action to recover the amount which, under any view of the contract, was due to the plaintiff. By analogy, we may refer to the well-known doctrine that no tender under a contract is necessary where a party to whom the tender is to be made denies existence of the contract or any liability thereunder. There was a minimum amount provided in the contract, for which the county was liable, provided the plaintiff furnished the power, viz. $3\frac{1}{2}$ cents per electric horse power for 25 horse power for 15 hours of each day during the life of the contract; and the record shows the plaintiff's compliance with that provision. Even assuming that the board of supervisors might have terminated the contract, it did not attempt to do so until its resolution of August 12, 1896, up to which time there had become due, at the minimum rate stated in the contract, the sum of $3,286, —a sum considerably larger than the amount sued for, and for which a verdict was directed. This minimum amount constituted a liquidated debt or demand, according to the terms of the contract. "Liquidated Debt. A debt is such when it is certain what is due and how much is due." "Liquidated Demand. A demand the amount of which has been ascertained or settled by agreement of the parties, or otherwise." 2 Bouv. Law Dict. p. 263. In Roberts v. Prior, 20 Ga. 561, the court, after stating that the question to be considered was whether a contract for the hire of a negro at a stipulated price, to be paid at the end of the year, is an open account or a liquidated demand, said (page 562):

"We had supposed that, if anything was settled, this point was. In Nisbet v. Lawson, 1 Kelly, 275, 287, we stated the rule to be that whenever the demand was fixed and certain, either by the agreement of the parties or by operation of law, that it was liquidated, with or without writing. And Mr. Bouvier says 'liquidated' is that which is made clear, certain, manifest,—as, liquidated damages, ascertained damages; liquidated debt, an ascertained debt, as to amount. A debt is liquidated when it is certain what is due and how much is due. 'Cum certum est an et quantum debeatur.' For, although it may appear that something is due, if it does not also appear how much is due, the debt is not liquidated."

The court, with an air of apparent weariness, added:

"We despair of ever stating the rule with more perspicuity than we have already done."

1 Sedg. Dam. (8th Ed.) § 299, states that "the commonest example of a liquidated demand is an action of debt, where there is an express contract to pay a sum certain at a fixed time."

We have, then, the case of a liquidated demand against the county, the board of supervisors refusing to recognize the contract, and rejecting it, and refusing to pay the minimum price named in it, and evidence that the plaintiff had furnished the power required by the contract. We think the case is within the language of Mr. Justice Cullen in Albrecht v. Queens Co., supra, where he suggested that there was an exception to the general rule as to actions against a county in a case "where the claim was liquidated by the existence of a county obligation for a specific sum"; for, as we have before stated, the plaintiff had his dual remedy for a claim of this character, either by mandamus or certiorari, according to the circumstances, or by an action directly against the county. We are therefore of opinion that, as the board of supervisors rejected both claim and contract, the county could be sued eo nomine on the contract, and without previous audit. The judgment should be affirmed.

Judgment and order affirmed, with costs. All concur; BARTLETT and HATCH, JJ., in result.