(33 Misc. Rep. 231.)

## PEATY v. CITY OF NEW YORK.

(Supreme Court, Trial Term, Kings County. December, 1900.)

MUNICIPAL CORPORATIONS—INJURIES—NEGLIGENCE—GOVERNMENTAL DUTY.

Plaintiff's decedent was a member of defendant's fire department, being a lineman belonging to the force in charge of the telegraph and fire-alarm lines of the department. While removing an abandoned line from a street, a pole which decedent had climbed to detach wires broke off, being decayed below ground, and, falling, killed him. *Held*, that the city was not liable for his death, even if negligent in failing to have the pole inspected, since in maintaining such poles it was engaged in a governmental matter.

Action by Catherine Peaty, as administratrix of Robert C. Peaty, deceased, against the city of New York, to recover for the death of decedent. The complaint being dismissed, plaintiff moved for a new trial. Denied.

Action for damages for the benefit of the widow and next of kin for the alleged negligence of the defendant causing the death of the plaintiff's decedent, who was her husband. The decedent was a member of the fire department of the defendant. He was a lineman, and belonged to the force which had charge of the telegraph and fire-alarm lines of the department. Their duty was to erect and care for such lines. While removing an abandoned line from a street with a gang, a pole which the decedent had climbed in order to detach the wires broke off at or below the surface of the ground, and falling killed him. It was decayed below ground.

Albert A. Wray, for plaintiff.
R. P. Chittenden, for defendant.

GAYNOR, J. The negligence which is claimed is that the defendant failed to have the poles inspected. Even so, the plaintiff could not recover. It may not be easy in the conflict and variation of decisions in this state to state the legal principle for this; but it is settled by authority. The state cannot be sued without its consent for any negligent act or omission of its officials, or liability created by them. And this rule that sovereignty cannot be sued in its own courts prevented counties and towns in this state from being sued, for they were only subdivisions of the state government. They could be sued in such cases only where it was expressly permitted by statute. In the recent revision of our town and county laws they have been classed as municipal corporations, but this change in name probably implies no other change.

It was the law with us from the beginning, that for any negligence of town officers in the governmental matters of keeping the highways in repair, executing the health laws, and the like, the town could not be sued; and a similar rule obtained as to counties. This is the common-law rule as we got it from England. When municipal corporations, i. e., cities and villages, began to be organized in this state and take the place of towns in government, the question soon arose in respect of whether the same rule was to apply to them, or whether they could be sued in such cases; and much of ingenuity, research and argument was applied to the subject. They were seen to be something more than mere subdivisions of the state government; they were distinct corporate entities. But

even as to them there was a general rule of the common law that
they were mere agencies of the sovereign power in performing such
functions of the general government as were delegated to them,
and could not for that reason be sued by individuals for damages
caused by their nonfeasance or misfeasance therein. It was how-
ever finally decided in this state that such actions would lie against
them. The ground upon which this was put was that of contract.
It was decided that a municipal corporation in accepting from the
state a charter which gave to it certain privileges and advantages,
and imposed on it the doing of certain public duties, thereby made
a contract with the state to do such duties, and that for any breach
or negligence therein which damaged an individual, such individual
could by privity through such contract maintain an action for dam-
ages against it therefor. "The surrender by the government to the
municipality of a portion of its sovereign power, if accepted by the
latter, may with propriety be considered as affording ample consid-
eration for an implied undertaking on the part of the corporation
to perform with fidelity the duties which the charter imposes;"
and such undertaking "enures to the benefit of every individual inter-
ested in such performance." Weet v. Trustees, 16 N. Y. 161, note.
This was held in the case of an individual injured by a defect in a
public highway; but the principle if carried out would make a mu-
nicipal corporation liable in an action for damages to an indi-
vidual for negligence in respect of all public duties delegated to it.
The learned judge who wrote in Weet v. Trustees, had to put such
municipal liability to individuals upon this ground of implied con-
tract, in order to avoid the rule above stated of nonliability to
individuals of municipal corporations acting as the mere instruments
of sovereignty, i. e., of the general government of the state. An-
other reason why the learned judge put it on such ground was that
in his opinion he expressly repudiated the proposition that a public
officer is liable to individuals in damages for injuries done to them
by reason of his failure to perform his public duties, or of his neg-
ligence in the performance thereof. That question was then in
open dispute in the courts of this state. In Bartlett v. Crozier,
17 Johns. 439, the court for the correction of errors had unanimously
reversed a judgment of the supreme court declaring such official
liability, and held that it did not exist, while twenty-three years
later the supreme court in Adsit v. Brady, 4 Hill, 630, had again
asserted the rule that "when an individual sustains an injury by
the misfeasance or nonfeasance of a public officer, who acts or
omits to act contrary to his duty, the law gives redress to the in-
jured party by an action adapted to the nature of the case." This
controversy was not settled until the decisions in Robinson v. Cham-
berlain, 34 N. Y. 389, and Hover v. Barkhoof, 44 N. Y. 113, which
finally declared such official liability. Now, as municipal corpora-
tions voluntarily accept their charters and undertake to perform
the public duties which such charters or other laws impose, the very
same as public officers voluntarily accept their offices and take oath
to faithfully discharge their duties, it seems quite impossible to
perceive any principle on which the former are not to be held liable

to individuals for negligence in respect of their public duties while
the latter are.

But on whichever ground we place such municipal liability, i. e.,
whether on the ground of implied contract by the acceptance of
their charters, as in Weet v. Trustees, or on the ground that mu-
nicipal corporations are liable to individuals for negligence in re-
spect of the performance or nonperformance of their public duties,
the same as public officers, as in Adsit v. Brady, it is plain that
either principle fully carried out would make them liable to actions
for damages by individuals for negligence in respect of all public
duties so imposed on them.    They could not, consistently, as it
would seem, be held so liable in respect of one public duty and
not of another.   In Weet v. Trustees (as also in Conrad v. Trustees,
16 N. Y. 158, with which it is reported as a note), such liability
was declared in respect of neglect of such public duty in the making
and repairing of public highways or streets.    But after so deciding
such general liability of municipal corporations, and making it the
same in effect as in the case of individuals having public duties to
perform by reason of holding public office, the courts did not ad-
here to the principle thus established.    They soon went back to
the rule in respect of such corporations, viz., that municipal corpo-
rations were not to be held liable to individuals for negligence in
respect of duties imposed on them of a governmental character, in
the doing of which they only act as a means or agency of the state
in the general scheme of state government; but only in respect of
matters not of that category, and permitted to such corporations
for their private advantage or emolument.    If a municipal corpo-
ration engages in the running of street cars, or in the manufacture
and sale of gas, or in supplying and selling water to its inhabitants,
or in the ownership and management of docks, it is not doing
governmental duties in the sense mentioned in such rule, and it
would be easy to see the application of such rule to such a case.
Bailey v. Mayor, etc., 3 Hill, 531; Scott v. Mayor, etc., 1 Hurl. &
N. 59, 2 Hurl. & N. 204; Cowley v. Mayor, etc., 6 Hurl. & N. 565;
Trustees v. Gibbs, L. R. 1 H. L. 93.    But how could such rule of
liability be applied to a case of neglect to keep a public highway
or street in repair?    Surely the making and repairing of highways
is and always has been a governmental matter.    It would seem
quite strange to class the making and repairing of highways as a
part of the private business of a municipal corporation, or as a
power exercised for its own advantage or emolument.    Yet the de-
cisions in this state have continued from the time of Weet v. Trus-
tees, to hold cities and villages liable for damages to private in-
dividuals for negligence in the governmental matter of making and
repairing public highways, while they hold them not liable for
negligence in respect of the governmental matters of executing laws
for the extinguishing of fires, the preserving the public health, the
administering of the public charities, and the maintaining of the com-
mon schools.    Maxmilian v. Mayor, etc., 62 N. Y. 160; Ham v. Same,
70 N. Y. 459; Smith v. City of Rochester, 76 N. Y. 506; Hughes
v. Monroe Co., 147 N. Y. 49, 41 N. E. 407, 39 L. R. A. 33; Spring-

field Fire & Marine Ins. Co. v. Village of Keeseville, 148 N. Y. 46, 42 N. E. 405, 30 L. R. A. 660. Are these governmental matters, and the making and repairing of highways not a governmental matter?

In Massachusetts there is no such variation of the rule, but it is consistently applied and carried out in all cases, viz., "that no private action, unless authorized by express statute, can be maintained against a city for the neglect of a public duty imposed upon it by law for the benefit of the public, and from the performance of which the corporation receives no profit or advantage." Hill v. City of Boston, 122 Mass. 344; Pettingell v. City of Chelsea, 161 Mass. 368, 37 N. E. 380, 24 L. R. A. 426.

In this state the exceptions to the contrary rule laid down in Weet v. Trustees, have grown to be far greater than the rule itself, though our courts have all the while professed to revere that decision; and such exceptions embrace the plaintiff's case.

The motion for a new trial is denied.