(34 Misc. Rep. 568.)

### LATTIN v. TOWN OF OYSTER BAY.

(Supreme Court, Trial Term, Nassau County. April, 1901.)

**1. ACTION AGAINST TOWN.**
     Laws 1890, c. 569, § 2, providing that towns are municipal corporations for the purpose of exercising powers and duties of local government, and section 182, providing that any action for the benefit of the town, or to enforce a liability of the town, shall be in the name of the town, do not make a town capable of suing or being sued generally, so as to give a constable thereof a right of action against it for fees which are made a statutory town charge.

**2. SAME—CLAIMS—CONCLUSIVENESS OF AUDIT.**
     Where a claim of a constable for fees against a town has been audited, the audit is conclusive as to the amount of the claim until corrected or set aside.

**3. SAME—ENFORCEMENT.**
     Where a claim against a town has been audited, it can be enforced only by a writ of mandamus to compel it to be included in the tax levy.

Action by Jarvis A. Lattin against the town of Oyster Bay to recover statutory fees as constable. Complaint dismissed. Motion for new trial denied.

John B. Merrill, for plaintiff.
George B. Stoddard, for defendant.

GAYNOR, J. From the beginning in this state towns have been deemed to be primarily political divisions of the state for the pur-

poses of state government, as shown by the framework and scheme
of state government and administration sketched by the state con-
stitution. It followed that as such they could not be sued any more
than the state itself, for sovereignty cannot be sued in its courts
without its consent. At the same time, however, they have always
been "corporate bodies" for certain limited purposes, being so named
by statute, and made capable of suing and being sued in certain speci-
fied cases only. 1 Rev. St. 337. Because of this limitation of cor-
porate attributes the courts have usually called them quasi corpora-
tions. As they could not be sued for claims against them, or in
any case not specifically allowed by statute, a system of official
audit was provided by statute for the collection of such claims.

It is claimed, however, that towns are now full municipal corpo-
rations, and therefore capable of being sued in all cases of liability
by them. This is said to have been brought about by the town law
(Laws 1890, c. 569). Section 2 thereof enacts that "a town is a mu-
nicipal corporation  *  *  *  formed for the purpose of exercising
such powers and discharging such duties of local government and
administration of public affairs as have been or may be imposed
upon it by law." Towns are also enumerated as municipal corpora-
tions in the general municipal law (section 1) and in the general
corporation law (section 3), passed as a part of the same general revi-
sion as the town law.

I do not perceive how this standing alone works any such result.
It does not make towns corporations, for they have always been
such by statute. It does not confer on them any new attributes;
no such words are used. At most it only classifies them and confers
on them a new name. But though it does not in terms make towns
suable where they were not previously suable by statute, it is claimed
that it effects this result indirectly by bringing them under that pro-
vision of section 3 of article 8 of the state constitution which pro-
vides that "all corporations shall have the right to sue and shall be
subject to be sued in all courts in like cases as natural persons."
But this claim is based on the misunderstanding that towns were not
corporations before the town law was passed, and subject to such
provision. As we have seen, however, they were; and none of the
eminent lawyers and judges who considered their status before the
enactment of the town law ever thought that the said constitutional
provision required that towns should be suable and capable of suing
generally, and that statutes of restrictions in that respect were there-
fore void. The article on corporations appeared first in the consti-
tution of 1846, the said provision being part of it. Those familiar
with the literature and terminology of the subject have always under-
stood that the intention by the words used was merely to confer on
corporations in general the capacity of suing and being sued, and not
to take away from the legislature the power of limiting such ca-
pacity in respect of political corporations, or (to keep closer to the
present case) of prescribing a method of collecting claims of such
corporations by means of an official audit, compelled by mandamus
and reviewed by certiorari. The antecedents, terminology and pur-
pose of a constitutional provision have often to be considered in

order to understand its meaning and scope in the general scheme of government. For instance, the prohibition in the federal constitution against any state passing ex post facto laws is in that way understood to apply to criminal laws only.

It is also urged that towns are made capable of suing and of being sued in all cases of liability by section 182 of the town law. This section only provides that "any action or special proceeding for the benefit of a town, upon a contract lawfully made with any of its town officers," and in other cases which are enumerated, "shall be in the name of the town"; and next that "any action or special proceeding to enforce the liability of the town upon any such contract, or for any liability of the town for any act or omission of its town officers, shall be in the name of the town." Even if these provisions were new, I do not see how we could find in them any authorization of new actions or proceedings by or against towns. They simply provide that actions by or against a town shall be in the name of the town. But section 182 is not new, but only a revision and combination of several previously existing statutory provisions. 2 Rev. St. p. 473; 1 Rev. St. pp. 337, 356. In addition to these citations, others on the same head could be made from the statutes relative to overseers of the poor, highway commissioners, and possibly other officials. If the legislature's intention was to make towns suable and capable of suing in all cases of liability, it could easily have expressed it. Instead, it obviously did no more than to revise and combine in one section the dispersed statutory provisions which specified the cases in which towns could sue or be sued, in some cases directly and in others by or through some official, and enact that thereafter all of such actions or proceedings should for uniformity be by or against the town eo nomine. These statutes were often not altogether plain in respect of whether the authorized action should be in the name of the town or of some official for it, as is shown by reported cases (Town of Chautauqua v. Gifford, 8 Hun, 152; Town of Lewis v. Marshall, 9 Abb. N. C. 104, affirmed in 56 N. Y. 663; Hathaway v. Town of Homer, 5 Lans. 267, reversed in 54 N. Y. 655; Lorillard v. Town of Monroe, 12 Barb. 161, affirmed in 11 N. Y. 392, 62 Am. Dec. 120; Town of Guilford v. Cooley, 58 N. Y. 116); and the object of section 182 was to do away with that useless question, not to authorize any new actions.

It can scarcely be suggested, for instance, that the provision of section 182 that "any action or special proceeding * * * for any liability of the town for any act or omission of its town officers, shall be in the name of the town," was intended to create new liabilities and actions against towns, by making them generally liable for acts and omissions of town officers. It only means that any right of action or proceeding for such a liability which is authorized by statute and exists shall thereafter be brought against the town by name; it does not purport to create any new liabilities of towns for such acts or omissions. It merely conforms the revision to the innovation in that respect which had already been made by statute in respect of rights of action against highway commissioners. To understand the provision as making towns liable generally for acts

and omissions of town officers would be to put towns in a worse position in that respect than cities. The general rule which we have from the common law is that municipal corporations are not liable to individuals for negligence in respect of public duties imposed on them by the sovereign power, i. e., duties of a governmental character, for in the performance of such duties they act not for themselves, i. e., for their own profit or advantage, but only as a means or agency of the state for purposes of government; and that they are so liable only in respect of matters not of that category, and which are permitted to them for their own private advantage or emolument, such as the running of ferries or street cars, the manufacture and sale of gas, the selling of water to their inhabitants, or the ownership and management of docks or toll bridges. Peaty v. City of New York, 33 Misc. Rep. 231, 67 N. Y. Supp. 276. It is easy to see the application of this rule; but in Weet v. Trustees, 16 N. Y. 161, note (which was the case of an individual injured by a defect in a public highway), it was disregarded, and instead it was held that a municipal corporation in accepting from the state a charter which at the same time gives to it privileges and advantages, and imposes on it the doing of certain public or governmental duties, thereby makes a contract with the state for the doing of such duties, and that for any breach thereof or negligence in its performance which damages an individual, such individual can by privity through such contract maintain an action for damages against such corporation; and this was accepted as the law in Conrad v. Trustees, 16 N. Y. 158, which was also the case of an individual injured by a defect in a public highway. But our courts soon receded from this new theory, and in cases for negligence in the matters of administering the public charities, maintaining the common schools, and executing laws for extinguishing fires and the preservation of the public health, held municipal corporations not liable, putting the decision on the ground that such duties were public or governmental, and not for the private advantage or profit of the municipality. In respect of public highways, however, Weet v. Trustees has continued to be followed, and, strangely enough, with occasional words of reverence. The result is the incongruous one of holding municipal corporations liable for damage to individuals for negligence in the highly public and governmental matter of making and repairing public highways, but not so liable in all other public and governmental matters. Peaty v. City of New York, supra. It certainly was not intended by the town law revision to put towns in a worse position in this respect than other municipal corporations. In every case in which the meaning of section 182 has come up, it has been deemed by the courts that it does not authorize any new actions against towns. Robinson v. Town of Fowler, 80 Hun, 101, 30 N. Y. Supp. 25; Miller v. Bush, 87 Hun, 507, 34 N. Y. Supp. 286; Lyth v. Town of Evans, 33 Misc. Rep. 221, 68 N. Y. Supp. 356, and cases there cited. The expression apparently to the contrary in People v. Board of Town Auditors of Town of Hempstead, 49 App. Div. 4, 63 N. Y. Supp. 114, would no doubt be deemed obiter by the learned and able judge who wrote it if the question were directly before him.

Nor does the report of the revision commissioners reveal any intention to authorize any new actions by or against towns, or that they understood that the provision of the constitution already cited meant that towns should be suable and capable of suing in all cases, and that the legislature could not restrict such right of action. If they so understood, and intended to carry out such understanding, as is claimed, they would not have framed any legislation on the subject at all, much less the guarded and restricted provisions of section 182, for none would be needed or could properly be passed, the constitutional provision being sufficient of itself.

It will also be closely observed that only actions or special proceedings to enforce the liability of the town "on any such contract," i. e., a contract "made with any of its town officers" by a third party, "or for any liability of the town for any act or omission of its town officers," are mentioned as capable of being brought against a town. This plaintiff has no such case. He is not suing on such a contract, nor for a liability created by any such act or omission.

I am referred to the case of Kennedy v. Queens Co., 47 App. Div. 250, 62 N. Y. Supp. 276, as authorizing this action; but that was the case of a county and is not strictly in point. Besides, I may not get the full bearing and effect of that decision, for the learned opinion in the case does not seem to have been concurred in by more than two judges, as probably only four took part owing to a change in the court's membership at about that time. Moreover, it does not seem altogether consistent with things well said in Albrecht v. Queens Co., 84 Hun, 399, 32 N. Y. Supp. 473, and it seems to be limited in a most guarded manner, and to an extent which leaves very little if any of it as binding, in People v. Coler, 48 App. Div. 492, 62 N. Y. Supp. 964. At all events, though it is true that counties have also always been by statute bodies corporate like towns, and are called municipal corporations in the county law for the first time, and that that case is therefore similar to the present one, I do not understand that it was meant that it must be applied to towns, and thereby change a system of collecting claims against towns which has existed from the foundation of the government, and which the legislature has not, it seems to me, changed or intended to change. It will not do to cite the case of Freel v. Queens Co., 9 App. Div. 186, 41 N. Y. Supp. 68; Id., 154 N. Y. 661, 49 N. E. 124,—as supporting the Kennedy Case, for the question was not raised there at all. If the Kennedy Case were deemed applicable to towns, I should of course follow it.

There was left in the codification of our town statutes, which is called the town law, the same provisions for town auditors and the same system of auditing claims against towns which had always existed. Some provisions were dropped in the revision and rewriting, but none that were essential to a preservation of the system. There is therefore nothing in this respect indicating a legislative intent to make towns generally suable for their liabilities.

The complaint seems to be insufficient for another reason. It alleges that the plaintiff's claim was for $1,237.15 and that $562.05

was paid on account by the town; and judgment is prayed for the balance. As no part of the claim could by law have been paid until the claim was audited, it follows as a legal conclusion from the allegation of payment that it was audited. That being the case, no action can be maintained on the original claim, for an audit binds the parties to it the same as a judgment, until corrected or set aside on review by certiorari or otherwise, whether the audit be for the full amount or a lesser sum; nor on the claim as audited, for its collection cannot be enforced by such action, but only by a writ of mandamus to compel it to be included in the tax levy and collected and paid, the very same way as payment of a judgment has to be enforced. People v. Board of Sup'rs of Queens Co., 33 Hun, 305; People v. Pople, 81 Hun, 383, 30 N. Y. Supp. 878; Albrecht v. Queens Co., 84 Hun, 399, 32 N. Y. Supp. 473; Martin v. Supervisors, 29 N. Y. 645; Osterhoudt v. Rigney, 98 N. Y. 222; People v. Barnes, 114 N. Y. 317, 20 N. E. 609, 21 N. E. 739. The city of New York is an exception, its charter providing that an audit shall not be binding. Section 149.

The motion is denied.